**UNITED STATES of America,
Appellant,**

v.

**Jasper Junior MOODY, Appellee.**

**No. 73–1313.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) July 2, 1973.

Resubmitted Under Third Circuit Rule
12(6) Sept. 12, 1973.

Decided Sept. 24, 1973.

---

6. But see note 3 *supra.*

Robert E. J. Curran, U. S. Atty., Richard J. Stout, Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Edward H. Weis, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellee.

Submitted Under Third Circuit Rule 12(6) on July 2, 1973.

Before GIBBONS and HUNTER, Circuit Judges.

Resubmitted Under Third Circuit Rule 12(6) on Sept. 12, 1973

Before GIBBONS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This is an appeal by the government in a criminal case under 18 U.S.C. § 3731 (Supp.1973) from an order of the district court granting a motion to suppress as evidence 54 one-gallon jugs of nontaxpaid whiskey found in the trunk of a car driven by the defendant.[1] The government contends that the trial court erred in holding that the defendant has standing to challenge the constitutionality of the search in question, and in failing to find the warrantless search conducted in the case justifiable under the "automobile exception." The defendant-appellee challenges the district court's finding of probable cause for the search. While we agree with the district court's holding on the standing and probable cause issues, we find that it erred in holding the search unreasonable absent a warrant, and reverse.

The relevant facts are not in dispute. On April 5, 1972, Special Agent Dutch of the Bureau of Alcohol, Tobacco and Firearms received a telephone call from an unidentified informant. The agent was told that a 1961 Chevrolet bearing Pennsylvania license tag 97934G was

---

1. The charge against the defendant is violation of 26 U.S.C. §§ 5205(a)(2), 5604(a)(1) (1970).

leaving the 2500 block of Dover Street, Philadelphia, Pennsylvania, between the hours of 6:30 and 7:30 p. m., to make deliveries of nontaxpaid whiskey, and that the vehicle was moving approximately thirty cases each week. Agent Dutch observed the car in the area specified on the evening of April 6 and again on April 13. On the first occasion the car left the area unnoticed. On the second occasion, it was observed leaving at about 6:30 p. m., but Agent Dutch's attempt to follow it proved unsuccessful.

On April 19, the same informant telephoned Agent Dutch [2] and told him that a delivery would be made by the 1961 Chevrolet to 1345 York Street at approximately 8:30 p. m. the following evening. Dutch and other agents set up a surveillance of that address on the 20th. At about 8:20 p. m., the 1961 Chevrolet arrived and a black male, identified as the defendant, was observed carrying a cardboard carton from the car into the 1345 York Street address. Two agents thereupon approached the parked car. As they did so, the defendant started to leave the York Street dwelling. Upon seeing the agents in the vicinity of the car, however, he returned to the dwelling. The agents then retired to a location where they could not be detected.

At approximately 10:00 p. m. the vehicle left the area and the agents, all of whom were white, followed. Their cars were unmarked and apparently nothing they wore clearly identified them as Federal Agents. As the defendant stopped at a traffic light, one of the agents pulled alongside his car and stared at him for several seconds. The defendant, seeing the agent, sped away and a chase ensued. After several turns, the defendant stopped his car in the traffic lane and successfully escaped on foot. Thereafter, one of the agents moved the vacant car to the side of the road, and using the keys left in the ignition, opened the car's trunk and discovered the illegal whiskey.

■■ The government's first contention is that the defendant abandoned the car and its contents and, as a result, lacks standing to challenge the legality of the search and seizure.[3] If abandon-

---

2. Though the identity of the informant was still unknown, Agent Dutch concluded that this was the same informant since that is how he identified himself, and since he followed the instructions given to the April 5th caller by asking to speak to Agent Dutch or Steiger. Appendix to brief for Appellant at 26–A.

3. The government also challenges the defendant's claim to "automatic standing" under Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). In Jones the Court held that where "possession both convicts and confers standing, [there is no] necessity for a preliminary showing of an interest in the premises searched or the property seized." Id. at 263, 80 S.Ct. at 732. The continuing validity of the rule has been specifically called into question by the Supreme Court dicta in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565 (1973).

We do not deal with the continuing validity of the "automatic standing" rule in the present case, however, for several reasons. First, the Brown decision was issued after the district court completed the proceedings in issue here. At the time of the hearing on the motion to suppress, Jones was clear authority recently reaffirmed in this Circuit.

See United States v. West, 453 F.2d 1351 (3d Cir. 1972). The defendant's sole reliance on it for standing was reasonable. Further, it is likely the defendant could have asserted an alternate basis for standing had that appeared necessary, either by alleging a possessory interest in the contraband seized or in the vehicle searched (with regard to the vehicle, each of the government's witnesses indicated that the defendant was driving the car). Therefore, even if we were to find that the automatic standing rule was no longer valid, it would appear unjust to deny the defendant an opportunity to amend his original motion, and given that opportunity, it is likely he would establish his standing in any case.

Second, the issue was not raised by the government until this appeal, and as a result, the district court has had no opportunity to examine the question. It goes without saying that the proper function of the court is to review the work of the district court, and not to make initial determinations on complicated issues.

Finally, since we hold for the government on the merits, a decision on this question would have no practical effect on the outcome of this case.

ment did occur, there would be a loss of standing. Abel v. United States, 362 U. S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). However, abandonment depends largely on the possessor's intent, United States v. Minker, 312 F.2d 632, 634 (3d Cir. 1962), and the party relying on it must establish the necessary state of mind by clear and unequivocal evidence. Friedman v. United States, 347 F.2d 697, 704 (8th Cir. 1965); *see* United States v. Robinson, 430 F.2d 1141, 1143 (6th Cir. 1970). We agree with the district court that the government has not met its burden on this issue.

The only facts from which one can infer intent indicate that the defendant, a black man, was aware that his vehicle was being followed by several unidentified white men and that earlier two men (again white) had approached his car. On these facts one could reasonably reach two conclusions: that he knew he was being followed by law enforcement agents and was seeking both to avoid arrest and abandon the incriminating evidence in the trunk of his car; or, that he believed he was being pursued by private citizens who intended to do him harm, and that he only left his car temporarily in order to escape this danger. Since only the former state of mind would constitute an abandonment, the evidence on the issue is ambiguous and cannot support a finding that the car and its contents were abandoned.

The next issue—whether the agents had probable cause to conduct the search—is raised by the defendant-appellee and not by the government. Ordinarily a defendant would not be able to take an appeal from a ruling on a Motion to Suppress since it lacks the finality necessary under 28 U.S.C. § 1291 (1970). *See* Bova v. United States, 460 F.2d 404 (2d Cir. 1972). However, since the government's appeal challenges

an "order of a district court suppressing or excluding evidence," 18 U.S.C. § 3731 (Supp.1973), the defendant can raise issues with regard to findings and rulings relevant to that order under the umbrella of the government's appeal. United States v. Halbert, 436 F.2d 1226 (9th Cir. 1970).[4] As a result, the question of probable cause is properly before us.

Probable cause for a warrantless car search exists, if there is, "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction . . . ." Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925). Clearly, the information provided by the anonymous informer could not meet this standard by itself. *See* Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We are satisfied, however, that when the "independently suspect activity" observed by the agent on the evening of April 20, is added to the anonymous tip and the evidence which corroborates it, there is sufficient evidence to support the district court's finding of probable cause. United States v. McNally, 473 F.2d 934, 939–940 (3d Cir. 1973).

The first thing to note is that the events as they unfolded prior to the search bore out the informant in every respect. The make, year and license tag number of the car were all as indicated, and at the time and place specified for a delivery, the defendant was observed carrying a large cardboard carton from the car into the 1345 York Street home.

While this corroborative evidence may not be sufficient to bring the tip itself up to probable cause standards, Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), it does give it added credibility when it is weighed

---

4. This is in conformity with decisions of the Supreme Court in interpreting statutory grants of analogous appeal rights to the government under the predecessor to the present § 3731. *See, e. g.,* United States v.

Borden, 308 U.S. 188, 205–207, 60 S.Ct. 182, 84 L.Ed. 181 (1939), *distinguishing* United States v. Curtiss-Wright Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936).

in conjunction with the independent evidence of suspicious conduct observed by the agents conducting the search. *See Id.* at 418, 89 S.Ct. 584; United States v. McNally, *supra,* 473 F.2d at 939. When the defendant observed the agents in the vicinity of his car, he retreated into 1345 York Street and waited about one hour. Certainly from this, the agents could reasonably suspect that the car contained contraband and that he was trying to avoid apprehension as its driver by delaying his departure until he was reasonably certain they had left.[5] Further, when he sped away from the pursuing agents and then left the car (with the keys still in the ignition) in the middle of the street and fled on foot, the agents' suspicions with regard to the use being made of the car were legitimately heightened and confirmed. United States v. Edwards, 441 F.2d 749, 752–754 (5th Cir. 1971) (alternative holding); Pegram v. United States, 267 F.2d 781 (6th Cir. 1959). While these actions might be viewed differently, interpreting them as indicia of criminal activity is entirely reasonable. When they are added to the tip and the events corroborating it, there is ample evidence to support the reasonableness of the search.

The government's second contention, and the final issue raised, is that though no warrant was obtained for the search, it was justified under Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which held that under certain circumstances the search of an automobile can be conducted without a warrant. The rationale for this rule lies in a car's mobility which often makes a search possible only within a brief period of time. Coolidge v. New Hampshire,

403 U.S. 443, 459–460, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As the Court explained in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970):

". . . the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." Id. at 50–51, 90 S.Ct. at 1981.

In *Carroll,* the option of an immediate warrantless search was held valid. *Carroll, supra,* 267 U.S. at 153, 45 S.Ct. 280.

The defendant, however, argues that this case is more akin to Coolidge v. New Hampshire, *supra,* in which the Court distinguished *Carroll* in holding that a warrant was required for a car search. In reviewing the facts of *Coolidge,* two key differences from the typical car search situation are apparent. First, the evidence which provided probable cause did not arise unexpectedly immediately before the search. It was known well in advance, so that the officers had ample opportunity to secure a warrant before the evening of the search, and avoid any delay in the carrying it out.[6] Second, there was no real danger that the car would be moved even if the search were delayed while a warrant was obtained. The defendant

---

5. While his retreat might also have been prompted by the belief that the men in the vicinity of his car were private citizens seeking to do him harm, this is less plausible since he made no attempt to call the police or send one of the occupants of the 1345 York Street house for help. In any case, the agents needed only a reasonable belief of criminal activity, not conclusive proof, to justify the search.

6. In fact, a warrant (which proved to be procedurally invalid) was obtained prior to the search. 403 U.S. at 449–453, 91 S.Ct. 2022.

had been under investigation for several weeks and had made no attempt to leave the area. Further, on the evening of the search, the car was parked, unoccupied, in his driveway, and there was no practical danger that he or any confederate would gain access to it. *Coolidge, supra,* 403 U.S. at 460, 91 S.Ct. 2022. Under these circumstances, the rationale for a warrantless car search was absent.

The *Coolidge* holding, however, does not help the defendant since in this case, unlike *Coolidge,* the basic facts required to make a warrantless car search justifiable, are present. First, probable cause for the search only arose as a result of the defendant's behavior immediately prior to the search. There was no basis, absent that behavior, to secure a search warrant.[7] Second, there was the distinct possibility that the car would be moved and the evidence tampered with if the search was delayed while a warrant was sought since the defendant's action in leaving the car unattended was ambiguous. While he might have been abandoning it and the contraband it contained, he might well have been leaving it temporarily, with the intent to retrieve it later.

Under these circumstances, the risk inherent in delaying the search of a car —removal of the car by the owner or a confederate—was clearly operative and unavoidable, and the search without a warrant justified. Since the failure to obtain a warrant was the basis of the district court's holding, we conclude that it erred in granting the motion to suppress.

The judgment of the district court will be reversed.

7. Prior to the evening of April 20, the only information the agents possessed was the result of an anonymous tip. Since they had no information as to the informant's reliability or as to factual basis for his accusations, and since they had almost no evidence corroborative of the tip, probable cause for a search did not exist. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).