COMMONWEALTH vs. BENIGNO S. MOTTOLA.

Suffolk.   September 16, 1980. — December 9, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Practice, Criminal,* Appeal.   *Rules of Appellate Procedure,* Construction,
Enlargement of time.   *Massachusetts Bay Transportation Authority,*
Police officers.   *"Threshold" Police Inquiry.   Search and Seizure.*

Under Mass.R.Crim.P. 15(a)(3)(B), an extension of time to appeal from a
decision of a judge could be granted by a judge other than the one who
made the decision.  [776-778]

Under St. 1968, c. 664, the powers and duties of police officers of the
Massachusetts Bay Transportation Authority are not limited to
premises owned by the authority.  [778-781]

Upon appeal by the Commonwealth from a decision allowing a defend-
ant's motion to suppress a gun on the ground that police officers of the
Massachusetts Bay Transportation Authority were without authority
to stop and frisk the defendant on premises not owned by the
M.B.T.A., the defendant was entitled to raise the issue whether the of-
ficers' search violated the defendant's rights under the Fourth Amend-
ment.  [781-782]

Where a defendant had been identified by a high school student as the
person who had followed her to school, had told her that he would
wait for her after school, and had threatened he would harm her if she
refused his request that she pose for photographs, and where the de-
fendant's startled expression upon being approached by a police officer
led the officer to fear for his safety, the officer was warranted in con-
ducting a pat down search of the defendant's outer garments.
[782-783]

COMPLAINT received and sworn to in the East Boston Di-
vision of the District Court Department on December 15,
1979.

A motion to suppress evidence was heard by *Colicchio,* J.

*Frank Mondano,* Assistant District Attorney (*Matthew L.
McGrath, III,* Legal Assistant to the District Attorney, with
him) for the Commonwealth.

*Robert E. Shamon (Ronald J. Itri* with him) for the defendant.

DREBEN, J. This is an interlocutory appeal by the Commonwealth (see G. L. c. 278, § 28E, and Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 [1979]) from a ruling allowing the defendant's motion to suppress a gun seized from the defendant by a police officer of the Massachusetts Bay Transportation Authority (MBTA). The defendant was charged with carrying a gun without a license (G. L. c. 269, § 10[a]) and with "accosting or annoying" a person of the opposite sex by offensive and disorderly acts and language (G. L. c. 272, § 53). A District Court judge first denied the motion to suppress and upheld the seizure of the gun under the "stop and frisk" rationale of *Terry* v. *Ohio,* 392 U.S. 1 (1968). On rehearing, however, he revoked his original ruling and allowed the motion on the ground that the statute establishing the MBTA police force, St. 1968, c. 664, does not give an MBTA officer authority to "stop and frisk" persons on premises not owned by the MBTA.[1] The issues raised in this appeal are whether the MBTA police officer had such authority and whether the seizure was warranted under *Terry* principles. In addition, the defendant filed a motion to dismiss in which he argued that the appeal was untimely.[2] We reject the defendant's contentions, rule that the judge erred in allowing the motion to suppress and remand the case for further proceedings consistent with this opinion.

1. *Motion to dismiss.* We first dispose of the defendant's claim that the appeal did not comply with the procedural

---

[1] Although no findings or reasons were given by the judge in connection with his ruling on rehearing, the defendant's motion for rehearing stated as its sole ground that "the defendant wishes to submit additional evidence relative to the authority and police powers of the Massachusetts Bay Transportation Authority police officers." The briefs of both parties assume that the judge's ruling was based on that ground. Cf. *Katz* v. *Cooley,* 6 Mass. App. Ct. 882 (1978).

[2] The motion to dismiss the appeal was referred to the panel to be disposed of together with the appeal.

requirements of Mass.R.Crim.P. 15(a)(3)(B), 378 Mass. 883 (1979). Under that rule, the district attorney must in writing authorize the taking of an appeal "within three days after the decision of the judge or within such other time as *the judge* may allow" (emphasis supplied). The defendant claims that the words "the judge" refer exclusively to the judge who allowed the motion to suppress and that, since a different judge allowed the Commonwealth to proceed with its appeal, the second judge's action is a nullity. The defendant does not urge that he was prejudiced by the judge's action but urges invalidity as a matter of law.

The defendant's reading of rule 15 is contrary to the rules of construction contained in Mass.R.Crim.P. 2, 378 Mass. 844 (1979). Although rule 2 does not explicitly refer to definite or indefinite articles, similar matters are covered by specific portions of rule 2 which, by analogy, suggest that the word "the" is not to be accorded crucial significance. See rule 2(a)(1), rule 2(b)(5) and rule 2(b)(9).[3]

More important, the general principles of construction set forth in rule 2(a) and in the Reporter's Notes preclude the defendant's wooden reading. Rule 2(a) states that the "rules . . . shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay." As indicated by the Reporter in his notes to rule 2, "[T]he rules were not intended to be administered inflexibly. . . . Where a literal interpretation . . . would lead to unnecessary expense or delay . . . that interpretation is to yield to the principle enunciated in Rule 2(a)." Rules of the Courts of the Commonwealth, Rules of Criminal Procedure at 6 (M.C.L.E. 1979). See also 1 Wright, Federal Practice and Procedure, §§ 31 and 32 (1969).

The defendant's interpretation would unquestionably lead to delay or expense. Under the current practice of assignment of judges, it would require seeking out the location

---

[3] Rule 2(a)(1) provides that "[w]ords or phrases importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular, . . ." Rule 2(b)(5) and rule 2(b)(9) give expansive meanings to the words "court" and "judge."

and schedule of the first judge,[4] and would thus complicate and unnecessarily delay the Commonwealth's right to seek review. Moreover, there is no reason intrinsic to rule 15 which suggests that the judge passing on a late authorization must be the same judge who decided the motion to suppress. Two other rules, Mass.R.Crim.P. 46(b), 378 Mass. 922 (1979), and Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979), each of which provides for an alternative procedure in cognate cases, see *Commonwealth* v. *Dellicolli, post* 909 (1980), permit enlargements of time by other judges. We see no purpose for a different result under rule 15 and, therefore, hold that the extension authorized by the second judge was valid.[5]

2. *Authority of MBTA police officers to arrest the defendant at the high school.* The events leading to the seizure of the gun and the arrest of the defendant are set forth in the judge's findings made prior to his original denial of the motion to suppress. On December 14, 1979, at approximately 8:00 A.M., a ninth grade student on her way to East Boston High School was approached by the defendant at the MBTA station at State Street, Boston. They engaged in small talk and both boarded the train. The student disembarked at Maverick Station and went to an MBTA bus stop to await a bus bound for the high school. She noticed the defendant standing beside her, and when she boarded the MBTA bus, he again followed her and sat next to her. He asked her if she would like to pose for photographs. She became apprehensive and refused. He stated he would pay her for posing and that she should have no concern because the photos would be distributed out of State. She became more fearful and again refused. When she alighted from the bus, the defendant followed her and repeated his sug-

---

[4] The Commonwealth in an affidavit states that at the time of the allowance of the Commonwealth's authorization by the second judge in East Boston, the first judge was sitting in Salem.

[5] We have not considered the conflicting affidavits filed by the parties as to statements made by the first judge in connection with the defendant's motion to dismiss. See Mass.R.Crim.P. 15(a)(4).

gestion that she pose for photographs. Upon their arrival at the White Street entrance of the school, the defendant stated that he was going to wait for her after school and that if she did not cooperate, he would harm her. The student informed the principal's office of the incident and was excused from school. The Boston police were notified and they, in turn, notified the MBTA police. A detective of the MBTA police arranged with the student to take her to East Boston High School that afternoon to locate and identify the defendant. The detective, another MBTA officer and the student drove by the White Street entrance of the high school in an unmarked car at 1:00 P.M., and the student pointed out the defendant. The two MBTA officers approached the defendant and, when the detective identified himself as a police officer, the defendant made a startled expression which caused the detective to become concerned for his safety. He conducted a pat down search of the defendant's outer garments and found a hand gun. He then arrested the defendant for carrying a gun without a license.

The defendant argues that the MBTA officer had no authority to arrest him on premises not owned or controlled by the MBTA. This argument, however, ignores the plain language of St. 1968, c. 664, which authorizes the establishment of a police department by the MBTA. Section 1 of c. 664 states that "such police officers shall have, within the territorial limits of the authority,[6] the powers and duties conferred or imposed upon police officers of cities and towns" under G. L. c. 41, § 98, and "shall have the powers and duties which are conferred or imposed upon police officers" of railroads, street railways and steamboats under

---

[6] General Laws c. 161A, § 2, inserted by St. 1964, c. 563, § 18, "creates the Massachusetts Bay Transportation Authority and makes the territory of seventy-eight municipalities of Greater Boston and their inhabitants 'a body politic and corporate and a political subdivision of the commonwealth.'" *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 540 (1965). See also c. 161A, §§ 15 and 16, providing for the addition and elimination of municipalities. There are now 79 municipalities within the MBTA.

G. L. c. 159, § 93. Although the powers and duties conferred on police officers under c. 159, § 93,[7] are, for the most part, limited to the premises of transportation companies, there is no such limitation on the powers of police officers of cities and towns under c. 41, § 98. Since the statute explicitly confers upon the MBTA police the powers of both G. L. c. 41, § 98, *and* G. L. c. 159, § 93, we find no indication of a legislative intent to confine the authority of MBTA police to MBTA premises. To the contrary, St. 1968, c. 664, is a legislative statement that MBTA police officers are to have broader powers than railroad and other police officers governed by c. 159, § 93.[8]

---

[7] In relevant part, G. L. c. 159, § 93, as last amended by St. 1976, c. 380, provides: "Railroad . . . or steamboat police officers may preserve order on the premises, cars, vehicles, vessels and boats of the corporation or company upon whose petition they are appointed . . . may, without a warrant, arrest an idle, noisy, or disorderly person upon such premises, cars, vehicles, vessels or boats; or a passenger upon such cars, vehicles, vessels or boats who refuses to pay his fare . . . may, without a warrant, arrest any person committing any of the offences specified in section one hundred and four; and railway police officers may, without a warrant, arrest any person committing any of the offences specified in section ninety-four of chapter one hundred sixty-one. In addition to the aforementioned powers, said railroad . . . or steamboat police officers shall possess and exercise such other powers to arrest without a warrant on the premises, cars, vehicles, vessels and boats of such corporation or company . . . as are conferred on police officers of the cities and towns of the commonwealth, or may arrest without a warrant off such premises when in fresh and continued pursuit for a violation for which such officers are empowered to arrest without a warrant on such premises."

[8] We note that, if the defendant's argument were accepted, MBTA police officers appointed pursuant to c. 664 would have fewer powers than previously exercised by transit police officers. As indicated in an MBTA report, before 1968, protection was provided by a special unit of the Boston police department paid for by the MBTA. Special Report of the MBTA, pursuant to c. 2 and 9, Resolves of 1977, Relative to Police Protection in the Authority's Rapid Transit Stations, at 1 (1977) (Report). See also 1980 House Doc. 5955, at 33. These officers were assigned by the Boston police department and apparently were not appointed pursuant to G. L. c. 22, § 9L. Therefore, they would not have been limited to the powers set forth in G. L. c. 159, § 93. We also note that the defendant's position would prevent the MBTA police from using patrol cars to provide protection for buses and would preclude other off premises practices of MBTA police officers current at the time of the report. Report at 8 and 10.

It is not unusual for transit police officers to have such broad authority,[9] and we note that there is no question here of conflicting jurisdiction as the Boston police initiated the MBTA investigation. We hold, therefore, that the MBTA police officers had authority to question and arrest the defendant at the East Boston High School, at least where, as here, the offense originated on MBTA property and related to the protection of an MBTA passenger.

3. *Propriety of search and seizure.* The defendant also attempts to sustain the judge's suppression order on another ground, namely, that the "stop and frisk" of the defendant was in violation of the defendant's rights under the Fourth Amendment to the United States Constitution.

At the original suppression hearing, the District Court judge ruled against the defendant on this issue. A threshold question is whether the defendant may raise this issue as he does not have a right to appeal a decision by a judge of the District Court determining a motion to suppress evidence. General Laws c. 278, § 28E, as appearing in St. 1979, c. 344, § 45. Mass.R.Crim.P. 15(a), 378 Mass. 882 (1979). We think the rule which permits an appellee who has not filed a cross appeal to rely on any ground which supports the judgment should be applicable. See *Alholm* v. *Wareham,* 371 Mass. 621, 625 (1976). The Federal courts follow this procedure under the cognate statute, 18 U.S.C. § 3731 (1976), which provides that the government, but not the defendant, may take an interlocutory appeal from a decision on a motion to suppress evidence. *United States* v. *Moody,* 485 F.2d 531, 534 (3d Cir. 1973). *United States* v. *Finn,* 502 F.2d 938, 940 (7th Cir. 1974). *United States* v. *Swarovski,* 557 F.2d 40, 49 (2d Cir. 1977), cert. denied, 434 U.S. 1045

---

[9]See, for example, Cal. Pub. Util. Code § 28767.5 (Deering 1980 Supp.), giving transit police the powers set forth in Cal. Penal Code § 830.1 (Deering 1980 Supp.); N.Y. Pub. Auth. Law § 1204.16 (McKinney 1980 Supp.), giving transit police the powers set forth in N.Y. Crim. Proc. Law § 140.10 (McKinney 1971). But see Art. XVI, § 76(a), of the Washington Metropolitan Area Transit Authority Compact, which appears at 2 D.C. Code Encycl. § 1-1431 (West 1978 Supp.).

(1978). This rule avoids "the possibility of continuing controversy over the same evidence," *Commonwealth* v. *Boswell*, 374 Mass. 263, 267 (1978), and prevents multiple appeals concerning its admissibility. Accordingly, we hold that the defendant is entitled to raise the propriety of the search "under the umbrella of the government's appeal." *United States* v. *Moody, supra* at 534.

The two requirements applicable to "stop and frisk" cases as set forth in *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974), are met in this case. First, "the initiation of the investigation by the police was permissible" in view of the student's account of the incident and her identification of the defendant at the school. Second, the "scope of the search was justified by the circumstances." *Commonwealth* v. *Silva, supra* at 405. The test for allowing a reasonable search for weapons as explained in *Terry* v. *Ohio*, 392 U.S. at 27, "is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Commonwealth* v. *Silva, supra* at 406. *Commonwealth* v. *Almeida*, 373 Mass. 266, 271 (1977).

As applied to the facts found by the motion judge, we think the police officer could well have believed that his safety or that of others was in danger. The defendant was identified by the student as a person who had followed her all the way from State Street station to East Boston High School, had told her that he would wait for her after school, and had threatened that he would harm her if she did not accede to his request. The student's story was confirmed by the facts. The defendant was, indeed, waiting for her after school. When the officer identified himself as a police officer, the defendant had an expression on his face which led the officer to fear for his safety. "[I]n applying hindsight to the officer's actions, we think it crucial to remember, as shown by many tragic climaxes to threshold police inquiries, 'the answer might be a bullet.'" *Commonwealth* v. *Almeida*, 373 Mass. at 271, quoting from *Terry* v. *Ohio, supra* at 33 (Harlan, J., concurring). The facts warrant the con-

clusion that, in making his split-second decision, the police officer could reasonably have feared for his safety or could reasonably have believed that the defendant might attempt to escape using arms. *Commonwealth* v. *Anderson,* 366 Mass. 394, 400 (1974).

Since no legal grounds for supporting the decision of the motion judge have been shown, the order of suppression is reversed, and, as indicated in part 1, *supra,* the motion to dismiss is denied. The matter is remanded to the District Court for proceedings not inconsistent with this opinion.

*So ordered.*