**UNITED STATES of America**

v.

**Steven Allen LYNCH, Defendant.**

**Cr. No. 1:03–CR–129.**

United States District Court,
M.D. Pennsylvania.

Oct. 30, 2003.

Anser Ahmad, Ahmad Law Offices, P.C., Thomas A. Thornton, Federal Public Defender, Harrisburg, PA, Gregory B. Abeln, Steven Allen Lynch, Carlisle, PA, for Defendant.

Christy H. Fawcett, U.S. Attorney's Office, Harrisburg, PA, for Plaintiff.

### MEMORANDUM AND ORDER

KANE, District Judge.

This matter is before the Court on Defendant's motion to suppress evidence seized from a motor vehicle on May 10 and 11, 2003. The Court has heard argument and received testimony and the matter is ripe for disposition. For the reasons that follow, the motion will be denied.

### I. Findings of Fact

Defendant came to the attention of Steelton Police Officer John Fry around 10:00 p.m. on May 10, 2003 as he traveled northbound on Front Street in Steelton driving a silver Buick Park Avenue. Defendant attracted Officer Fry's notice due to the dark tint of his automobile's

windows. When Officer Fry signaled Defendant to pull over by activating his overhead lights, Defendant turned into a tavern parking lot, Lawson's, and drove the car as though to park between two other vehicles. However, as Officer Fry began to get out of his cruiser, Defendant continued to drive his vehicle and attempted to escape through the alley abutting the parking lot. Then, his egress blocked by a tow truck and Officer Fry's vehicle, he rammed the Officer's cruiser with his car. Defendant then abandoned the vehicle, leaving the driver's door open and the motor running. There was a passenger in the vehicle who also fled.

As Defendant's vehicle struck Officer Fry's, the Officer made eye contact with him, looking at him full in the face. Officer Dennis Basonic, who had followed Officer Fry into the parking lot, witnessed these events. He saw the suspect from a distance of these car lengths and then gave chase. At one point he and Defendant were side by side, and Officer Basonic viewed the suspect more closely. Officer Basonic was not able to capture the Defendant.

Officer Fry called for a tow of the Park Avenue and then entered the car to turn off the motor. At that time, he observed crack cocaine, a large sum of money, and an ATM "MAC" card bearing Defendant's name in the open center console of the vehicle. Before proceeding further, Officer Fry telephoned Detective Elhajj, a member of the Dauphin County drug task force, to alert him of his findings. An officer arrived on the scene and took digital photographs of exterior and interior of the car. Detective Elhajj then seized the items from the center console. The vehicle was towed to a yard. Officer Fry followed the tow truck in his patrol car. As the Park Avenue was unloaded from the towing vehicle, Officer Fry peered into its rear window. He observed a gun and a grocery bag and an empty Pepsi carton, suggesting that the gun spilled from its hiding place within these containers during the towing process. Officer Fry seized the gun before the car was driven by the tow truck driver into a indoor garage.

Based on the foregoing facts, Detective Elhajj determined to make application for a warrant to further search the vehicle. Because it appeared that he would be unable to secure a warrant that evening, he instead visited the home of the vehicle's owner, Lucy Mitchell, also the mother of Defendant. Ms. Mitchell had reported the Park Avenue stolen around midnight that evening, so Detective Elhajj sought and received her permission to search the car. Detective Elhajj's search of the vehicle the following day netted a scale, ziplock bags, and photographs of the Defendant, among other things.

Officer Fry, using the MAC card seized from the car, obtained Defendant's drivers' license photograph from Penn DOT. He recognized the photograph as the suspect he had observed driving the Park Avenue and fleeing the scene. Officer Fry shared the photo with Officer Basonic, who also recognized the photographic as the suspect he had chased. Later, both officers observed and identified Defendant at a preliminary hearing held in Dauphin County Court.

## II. *Discussion*

Defendant has moved to suppress all of the evidence seized and to suppress his identification by the officers as "tainted." Defendant argues (1) it was unreasonable for Officer Fry to stop Defendant's vehicle, (2) the officers' identification of Defendant as the driver of the vehicle was unnecessarily suggestive and therefore unreliable, (3) the search of Defendant's vehicle and

the seizure of its contents were unlawful and not justified under the inventory or plain view exceptions.

### A. Investigative Stop

 Stopping a car and detaining its occupants is considered a "seizure" and therefore subject protections of the Fourth Amendment, including a requirement of reasonableness under the circumstances. *See United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Furthermore, an investigative stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that ... either the vehicle or an occupant" has violated the law. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *see also United States v. Johnson,* 63 F.3d 242, 245 n. 2 (3d Cir.1995) (noting that under Pennsylvania motor vehicle law, "a trooper who has reasonable and articulable grounds to believe that a vehicle or driver is in violation of the Vehicle Code may stop the vehicle"). Whether a reasonable and articulable suspicion exists turns on an objective assessment of the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Here, Officer Fry testified that he stopped Defendant's vehicle because, based on his observation, he believed the window tint was in violation of the Pennsylvania Vehicle Code. *See* 75 Pa.C.S.A. § 4524(e)(1). Officer Basonic also testified that the windows on the car were obviously not in compliance with Pennsylvania law requiring 70% visibility. In the course of the attempted stop, the Officers observed Defendant violate other laws, including refusing to stop at the direction of a pursuing police officer and colliding into a police officer's vehicle. Accordingly, both Officers had articulable and reasonable suspicions that Defendant was in violation of Pennsylvania law, and the stop was therefore reasonable under the Fourth Amendment.

### B. Identification of Defendant

██ Defendant moves for the suppression of the identification, arguing that the identification procedure by Officers Fry and Basonic was unnecessarily suggestive. The government argues that the procedure was not suggestive and that even if it was, the officers had sufficient independent basis for identifying Defendant as the suspect such that there is no likelihood of misidentification.

 When there has been an allegation of an improper identification procedure, the court must consider whether there was such "impermissible suggestiveness" in the procedure that there is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Stevens,* 935 F.2d 1380, 1389 (3d Cir.1991). "[A] degree of suggestiveness does not in itself require exclusion of the evidence. '[R]eliability is the linchpin in determining the admissibility of identification testimony.'" *United States v. Dowling,* 855 F.2d 114, 117 (3d Cir.1988) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).

This case is unique in that the identifying witnesses were also the investigative officers. Officer Fry wrote a description of the suspect in his police report shortly after the incident and subsequently obtained a photograph of Defendant from his

driver's license record. He was able to confirm that the photograph was of the individual driving the Buick who had run away. Officer Basonic was likewise able to identify the individual as the suspect he chased the night before. The Officers identified Defendant at a preliminary hearing in state court where Defendant was handcuffed and wearing prison garb. There was no photo line-up or other independent identification procedure performed. Furthermore, there was a photograph of Defendant in the car and the Officers had observed a MAC card with Defendant's name on it. It is possible that these pieces of evidence suggested to the Officers that Defendant was the suspect they sought.

▆▆▆ Therefore, the issue becomes whether the suggestiveness "created a very substantial likelihood of misidentification." *Id.* (quoting *United States v. Milhollan*, 599 F.2d 518, 522–23 (3d Cir.1979)). The likelihood of misidentification must be such "that admitting the identification would be a denial of due process." *Stevens*, 935 F.2d at 1389. This inquiry is to be answered with reference to the "totality of the circumstances," *Dowling*, 855 F.2d at 117, considering such factors as "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Officer Fry testified that he had ample opportunity to observe the suspect while he attempted to pull him over and particularly as he rammed his vehicle head-on into the police cruiser. They made eye contact twice and the photographs and testimony establish that the lighting conditions were sufficient for both officers to get a good view of the suspect. Although the interval for observation was brief, the witness is a police officer trained in observation and not a casual observer. Officer Fry testified that after Defendant hit his vehicle, he became even more attentive because he was aware of the likelihood that he would have to produce a good description of the perpetrator. Officer Basonic testified that while he observed the incident from a distance, he was able to see the driver fairly well, and once he gave chase, he came very close to Defendant as he ran around the tavern. Both Officers testified that they had no doubt that Defendant was the driver of the vehicle, and under 24 hours had passed before they viewed the photograph and identified Defendant. Given these facts, it cannot be said that there existed a "substantial likelihood of misidentification." *Dowling*, 855 F.2d at 117. Accordingly, under the totality of the circumstances, this Court finds the Officers' identification of Defendant to be reliable and therefore admissible.

## C. Search and Seizures after Stop

Defendant challenges each of the searches of the vehicle that occurred after the vehicle was abandoned, arguing that the searches of the Buick were not made pursuant to any search warrant and the vehicle's contents were illegally seized. The government argues that although not made pursuant to a search warrant, the vehicle was properly searched under the inventory, plain view, and/or consent exceptions.

▆▆▆ As it is established that the search of the vehicle was not conducted pursuant to a valid search warrant, the burden is with the government to show that the search and seizure were reasonable. *United States v. Johnson*, 63 F.3d

242, 245 (3d Cir.1995). "It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The Court of Appeals for the Third Circuit has noted that these exceptions are tailored by the Supreme Court's determination of reasonableness, "that is, the government's legitimate interests in the search outweigh the individual's legitimate expectation of privacy in the object of the search." *United States v. Salmon,* 944 F.2d 1106, 1120 (3d Cir.1991).

■ Accordingly, before the Court can analyze the constitutionality of search, Defendant must establish a "reasonable expectation of privacy" in the car. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While two uniformed police officers in police cars looked on, Defendant fled the car on foot, leaving the door wide open and the motor and headlights running. At this point, he had abandoned the vehicle as he attempted to avoid apprehension. Many other courts have held that when a vehicle is abandoned in this manner, the subsequent search of the vehicle is lawful. *See, e.g., United States v. Tate,* 821 F.2d 1328 (8th Cir. 1987); *United States v. Oswald,* 783 F.2d 663 (6th Cir.1986); *United States v. D'Avanzo,* 443 F.2d 1224 (2d Cir.1971); *United States v. Edwards,* 441 F.2d 749 (5th Cir.1971).

In this case, Defendant could not have any reasonable expectation that the vehicle or its contents would be free from governmental intrusion. *See United States v. Barlow,* 17 F.3d 85, 88 (5th Cir.1994) ("One cannot, however, manifest a reasonable expectation of privacy in an item once it has been abandoned."); *see also United States v. Moody,* 485 F.2d 531, 533 (3d Cir.1973) (noting that if abandonment did occur, there would be a loss of standing to challenge the legality of the search and seizure). In this case, unlike in *Moody,* the evidence clearly establishes that Defendant "was seeking both to avoid arrest and abandon the incriminating evidence" in the car. 485 F.2d at 534. At the very least, any determination of reasonableness must be tempered by the minimal, if any, interest Defendant retained in the vehicle. *See Salmon,* 944 F.2d at 1120.

Although abandonment would be sufficient reason for this Court to deny Defendant's motion to suppress, the government did not raise this ground as a basis for admissibility, so for the sake of completeness, the Court will additionally address Defendant's challenges on the bases argued. The three searches of the vehicle will be addressed in turn.

### 1. Search and Seizure in Lawson's Parking Lot

■ Officer Fry testified that he began to conduct an inventory search of the vehicle after abandoning his attempt to chase its passengers. After calling the tow truck, Officer Fry sat inside the car to turn it off and secure it when he noticed in the center console a large amount of cash, a MAC card, and what appeared to be crack cocaine. At this point, he stopped the inventory search in order to call in a more experienced drug investigator, Detective Elhajj. After Detective Elhajj arrived and digital photographs of the vehicle and its contents were taken (*See* gov't ex. 3), but before the vehicle was towed, the items in the center console were seized. The inventory search was not continued at this point.

This search does not appear to be an inventory search, as it was not completed

before towing, only some of the items were seized, and was not done according to established police policy. *See United States v. Salmon,* 944 F.2d 1106, 1120 (3d Cir. 1991). Regardless of whether the Court views this search as a lawful inventory search, however, it is clear that the evidence seized is admissible under the plain view exception. *See Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

 The requirements for a lawful plain view search are: "First, the officer must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed.' Second, the incriminating character of the evidence must be 'immediately apparent.' Third, the officer must have 'a lawful right of access to the object itself.' " *United States v. Menon,* 24 F.3d 550, 559 (3d Cir.1994) (quoting *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)).

Here, the Officer Fry was lawfully in the vehicle in order to turn off the engine and secure the vehicle for towing, and had cause to seize the vehicle itself as involved in a crime. *See United States v. Burton,* 288 F.3d 91, 100 (3d Cir.2002). Detective Elhajj, the Officer who actually seized the evidence, was legitimately securing the abandoned vehicle for use as evidence in the crime, and testified that the contraband could be seen through the windows. The incriminating character of crack-cocaine accompanied by large amounts of cash is clear. The police additionally seized Defendant's MAC card, which although not contraband, is immediately apparent as evidence since the identity of the individual who hit the police car and then evaded arrest was at issue.

 In any event, even if the MAC card was not lawfully seized under the plain view exception, it would have lawfully been seized during the subsequent lawful inventory search. (*See* discussion below at II.C.3). Evidence obtained by unconstitutional means should not be suppressed "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police." *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Accordingly, the inevitable discovery doctrine presents an additional justification for admitting the evidence seized at the parking lot.

### 2. Search and Seizure at Tow Lot

 For the same reasons that the cash and drugs were lawfully seized, the gun in plain view to Officer Fry on arrival at the impound lot was properly seized. *See Coolidge,* 403 U.S. 443 at 466, 91 S.Ct. 2022, 29 L.Ed.2d 564. The officers were legitimately following the towed vehicle to the impound lot to be secured and saw the firearm through the back window of the well-lit lot. Defendant's argument that the officer's testimony of the circumstances of the discovery was incredible is unpersuasive. It is plausible that given the amount of jarring in a towing the gun came into plain view when it had not been before. Furthermore, the officers testified that the lighting conditions at the tow lot were more favorable than those at Lawson's. Finally, the evidentiary nature of a gun in a case where large amounts of crack-cocaine has been discovered and the suspect fled from the police, is immediately apparent. *See Menon,* 24 F.3d at 559. Accordingly, the evidence is properly admitted under both the plain view and inevitable discovery exceptions.

### 3. Inventory Search

 The government argues that the search conducted at the impound lot was a

lawful warrantless search under the inventory search exception. *See South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). They argue in the alternative that the search was lawful because the vehicle's owner (Defendant's mother) gave her consent to the search.[1]

■ To show the lawfulness of a vehicle inventory search, the government must first establish that the vehicle was lawfully in police custody. *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir.1988). Here, the car was properly seized as the instrument of and evidence of at least one crime.

■ Evidence seized during an inventory search is admissible if the inventory was conducted in good faith under standardized criteria. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). "The requirement that inventory searches be conducted according to such criteria or routine strikes a balance between the government's legitimate interests in such searches and the owner's legitimate expectation of privacy in the contents of the seized vehicle." *Salmon*, 944 F.2d at 1120 (footnotes and citations omitted). The Supreme Court has given three justifications for allowing inventory searches incident to impoundment: "the protection of the owner's property while it remains in police custody, the protection the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. at 369, 96 S.Ct. 3092 (citations omitted).

The government submitted into evidence the Steelton police department's towing and inventory procedures. (Gov't Ex. 1). The procedures mandate that an inventory of a vehicle, including all compartments and containers, be completed before towing. *Id.* It also provides that a "vehicle inventory towing form will be completed when an officer assumes responsibility for towing a vehicle." *Id.* Law enforcement witnesses testified that they performed the inventory search according to routine police department procedure, however, the government did not present any evidence as to whether the inventory form was completed and it is clear that the inventory was not completed before towing as required by the policy. However, this fact alone is not enough for this Court to say that the search was improper. *See Frank*, 864 F.2d at 1003. The policy removes any discretion in determining both whether to search and the scope of the search and thus meets the requirements of a standardized procedure. *See United States v. Salmon*, 944 F.2d 1106, 1120 (3d Cir.1991) (requiring that the standardized procedure limit an officer's discretion "regarding *whether* to search a seized vehicle" and "regarding the *scope* of an inventory search, particularly with respect to the treatment of closed containers") (citations omitted). There is no evidence that other than not conducting the search immediately (for which the government's counsel provided a reasonable explanation) that the officers failed to follow the standardized procedure.

Furthermore, the policy justifications for allowing comprehensive inventory searches are present here. The police had a legitimate interest in protecting themselves against claims of theft and protecting the vehicle's owner and the contents of the vehicle from damage or theft. *See South Dakota*, 428 U.S. at 369, 96 S.Ct. 3092.

■ Defendant argues that because the police had secured the vehicle, any

---

**1.** Defendant has not challenged the validity of the consent to search. Thus, the Court heard no evidence on the issue and makes no findings with respect to the validity of the purported consent to search.

exigent circumstances that would justify an inventory search were gone. However, a finding of exigent circumstances is not required for this type of search. *Id.; see also Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). Moreover, courts have held lawful inventory searches occurring much later than the search here. *See, e.g., Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (warrantless search of car was permissible if search fell within the automobile exception even where the search was conducted after the car was been impounded and had been in police custody); *United States v. Frank,* 864 F.2d 992 (3d Cir.1988) (search occurred five days after car was impounded). "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *United States v. Burton,* 288 F.3d 91, 101 (3d Cir.2002) (quoting *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). The same logic applies here. Accordingly, this Court finds that law enforcement conducted a legitimate and lawful inventory search and the evidence seized is therefore admissible.

### III. *ORDER*

Therefore, for the reasons discussed above, **IT IS ORDERED THAT** Defendant's amended motion to suppress (Doc. No. 59) is **DENIED. IT IS FURTHER ORDERED THAT** the hearing on this matter, held October 28, 2003, is **CLOSED**.