COMMONWEALTH vs. EDWARD J. SILVA.

Norfolk.    September 16, 1974. — November 14, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*"Threshold" Police Inquiry.    Search and Seizure.    Constitutional Law,*
Search and seizure.

Discussion of the dual inquiries arising in a criminal case upon a
challenge to the constitutionality of a warrantless search by police of
the automobile of a defendant not under arrest, whether the circum-
stances rendered initiation of the investigation permissible, and
justified the scope of the search undertaken. [405-408]
In the circumstances, where a police officer in a cruiser stopped it by .
another police officer in a second cruiser near an automobile in the
breakdown lane of a highway and was instructed by the second officer
to search under the front seat of the automobile because a passenger
therein who was now in the second cruiser may have hidden a firearm
there, and the first officer, after the second officer and the passenger
had driven off in the second cruiser to procure gasoline, found under
the seat a "little black packet," unzipped it and examined its
contents, paper folders containing heroin, it was held that unzipping
the packet and examining its contents were clearly a search for
evidence rather than a protective search for weapons, and that the
scope of the search was unreasonable under the Fourth Amendment
to the United States Constitution. [408-410]

INDICTMENT found and returned in the Superior Court on
October 1, 1970.

A pre-trial motion to suppress was heard by *Hale,* J., and
the case was tried before *Linscott,* J.

*Robert J. Ciolek* for the defendant.

*John P. Connor, Jr.,* Assistant District Attorney, for the
Commonwealth.

HENNESSEY, J.    The defendant was found guilty by a
jury on an indictment for unlawful possession of a narcotic
drug, specifically heroin, with intent to sell. He was
sentenced to a term of imprisonment at the Massachusetts

Correctional Institution at Walpole. The case is before us on a substitute bill of exceptions. The defendant asserts as error (1) the denial of his motion to suppress evidence which he asserts was seized as a result of an unconstitutional search; (2) the exclusion of certain questions addressed to the government's expert witness on cross-examination; (3) a statement in the trial judge's instruction to the jury that the defendant had not shown anything to demonstrate that he was an addict; and (4) the denial of his motion for a directed verdict.

The defendant's motion to suppress evidence was heard and denied by a judge of the Superior Court, and another judge of that court later presided over the jury trial of the indictment. We summarize the facts, as taken from the bill of exceptions and the findings of the judge who heard the motion to suppress, which findings were in turn incorporated in the bill of exceptions. At 11:30 P.M. on the night of May 24, 1970, two State police officers, Troopers Johnson and Pelletier, came on what was apparently a disabled vehicle in the breakdown lane on Route 24 in Randolph. The defendant got out of the passenger side of the car and approached the police cruiser; the female driver remained in the car. The defendant and Trooper Johnson recognized each other. The officer had heard from police sources that the defendant had been arrested about a month earlier for using a motor vehicle without authority, and that he was at that time in the company of a person who had a gun. The defendant asked the officer to take him to obtain gasoline. After Trooper Johnson agreed to do so, the defendant returned to the passenger side of his car, leaned over and, as described by Trooper Johnson, bent down under the front seat as if to place something under it. The defendant then returned to the cruiser. Trooper Johnson "pat frisked" the defendant, found no weapon on him, and placed him in the cruiser. The officer checked with the Registry of Motor Vehicles by radio and ascertained that the vehicle was not stolen and was registered to the defendant. At this point, a second cruiser driven by Trooper Lane arrived. Before leaving to take the defendant

for gasoline, Trooper Johnson instructed Trooper Lane to search under the passenger side of the stopped car because Johnson thought the defendant may have hidden a firearm there. The driver apparently remained in the car throughout. In searching beneath the front seat, Trooper Lane found a small black packet containing three bundles, each of which held twenty-five glassine folders containing a substance subsequently analyzed as heroin. When Trooper Johnson returned with the defendant, Trooper Lane showed Johnson what he had found. The policeman believed that they had seized drugs but they gave the defendant the benefit of the doubt and released him. He was arrested on a later date, after analysis of the drugs.

The defendant filed a motion to suppress the evidence consisting of the seventy-five folders of heroin on the ground that the search of the car, more particularly the search beneath the front seat, was an unreasonable search contravening the Fourth Amendment. The motion was denied and the defendant excepted.

We hold that the scope of the search was unreasonable under the Fourth Amendment, and that the motions to suppress the evidence and to direct a verdict for the defendant should have been allowed. Therefore, we need not and do not rest our decision on the issue whether the initiation of the search, even if characterized as a limited "stop and frisk," was constitutionally permissible.

The Commonwealth apparently concedes, and correctly so we believe, that the instant search was not made on the basis of probable cause. Accordingly, the line of cases applying the exigent circumstances and probable cause to search analysis of *Carroll* v. *United States,* 267 U. S. 132 (1925), is inapplicable to the search of the automobile at issue here. See, e.g., *Husty* v. *United States,* 282 U. S. 694 (1931); *Scher* v. *United States,* 305 U. S. 251 (1938); *Brinegar* v. *United States,* 338 U. S. 160 (1949); *Cooper* v. *California,* 386 U. S. 58 (1967); *Chambers* v. *Maroney,* 399 U. S. 42 (1970); *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971); *Cady* v. *Dombrowski,* 413 U. S. 433 (1973). Cf.

*Commonwealth* v. *Haefeli,* 361 Mass. 271 (1972); Note, 87 Harv. L. Rev. 835 (1974). Nor was the instant search made incident to a valid arrest. *United States* v. *Robinson,* 414 U. S. 218 (1973). Rather, the thrust of the Commonwealth's argument is that this search was justified under the principles first set forth in *Terry* v. *Ohio,* 392 U. S. 1 (1968). We proceed therefore to examine the facts of this case in light of those principles.

In decisions both before and after the *Terry* case, we have consistently sustained the right of a police office to make a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime. Further, we have upheld the frisk incident thereto where the police officer has reason to believe that the individual is armed and dangerous. *Commonwealth* v. *Lehan,* 347 Mass. 197 (1964). *Commonwealth* v. *Roy,* 349 Mass. 224 (1965). *Commonwealth* v. *Ballou,* 350 Mass. 751 (1966), cert. den. 385 U. S. 1031 (1967). *Commonwealth* v. *Matthews,* 355 Mass. 378 (1969). *Commonwealth* v. *Anderson, ante,* 394 (1974). We have, moreover, applied the same "stop and frisk" analysis in upholding the stopping of an automobile in order to conduct such an inquiry. See *Commonwealth* v. *Riggins, ante,* 81 (1974). See also *Commonwealth* v. *Dottin,* 353 Mass. 439 (1968); *Commonwealth* v. *Lanoue,* 356 Mass. 337 (1969); *Commonwealth* v. *Wilson,* 360 Mass. 557, 559-560 (1971).

In "stop and frisk" cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances. In both aspects the inquiry relates to whether the police conduct was reasonable under the Fourth Amendment, and there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Camara* v. *Municipal Court of San Francisco,* 387 U. S. 523, 536-537 (1967). *Terry* v. *Ohio,* 392 U. S. 1, 21 (1968).

We turn now to the first of these dual inquiries: whether the search of weapons here was constitutionally initiated.[1] In following the constitutional standards of *Terry* v. *Ohio, supra,* we have required that the police officer's action be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience. A mere "hunch" is not enough. Simple good faith on the part of the officer is not enough. The test is an objective one. While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry* v. *Ohio, supra,* at 27. Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger.

In light of these principles, we examine the search of the vehicle in this case on the issue of reasonableness in its inception. When the police arrived at the scene there was no apparent sign that a crime had been committed, was in progress, or was about to be committed. So far as appears, the scene was consistent with the defendant's contention that his vehicle had run out of gasoline. The police had knowledge that the defendant had been charged previously with operating a motor vehicle without authority, but the search of the defendant's vehicle took place after the police had learned that he was the owner of that vehicle. One of the policemen also believed that the defendant had at that time been in the company of another person who was illegally carrying a gun. The police had no knowledge of the reputation of the woman sitting in the defendant's vehicle.

[1] In most cases the two-fold analysis of stop and frisk depends on an initial determination whether the threshold inquiry, the stop, was justified. *Terry* v. *Ohio,* 392 U. S. 1, 32-33 (1968) (Harlan, J., concurring). Here, the vehicle was stopped in the first place, having run out of gasoline. Therefore, it is not a question whether the officer had cause to justify the stop. Rather, the police were required to render aid and in that sense the encounter was not initiated in a traditional *Terry* approach. Consequently, we use the term initiated in a broad sense to include the entire encounter and seek to ascertain the justification for the frisk and its permissible limits.

The incident occurred at night in an isolated area. Most important of all, the defendant made a gesture as if to conceal something in his automobile and one of the officers thought it was a gun. To all of these facts the officers were entitled to apply their police experience. They were also entitled to consider the possible reactions of the defendant who was involved in an unexpected and possibly, to him, unwelcome dialogue with the police.

We have serious doubt whether the circumstances here were so suspicious as to warrant any search at all by the police. Even the limited search for weapons, which is ordinarily characterized by a "pat-down" of the outer clothing of the suspect, is a serious intrusion on the sanctity of the person and is not to be undertaken lightly. *Terry* v. *Ohio, supra,* at 17.

However, in applying hindsight to the officer's actions, we think it crucial to remember that, as shown by many tragic climaxes to threshold police inquiries, "the answer might be a bullet." *Terry* v. *Ohio, supra,* at 33 (Harlan, J., concurring).

In consideration of all the factors in this case, we think that the initiation of the search here, if permissible at all, clearly approached the outer limits of police privileges to search. It may well have exceeded those limits. Beyond that, we need not decide whether the search was valid in its inception because we conclude for reasons expressed below that the search was excessive in its scope.

We turn next to the second of the dual inquiries arising out of a "stop and frisk" search: whether the scope of the search was within constitutional limits. The search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible. *Terry* v. *Ohio, supra,* at 19, quoting from *Warden* v. *Hayden,* 387 U. S. 294, 310 (1967) (Fortas, J., concurring). A weapons search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. *Terry* v. *Ohio, supra,* at 29. See *Preston* v. *United States,* 376 U. S. 364, 367 (1964). "The sole justification of the search in the present

situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* v. *Ohio, supra,* at 29.

The search is thus confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered. The issue as to what are the permissible limits has to be decided on the facts of each case. In most instances the search must be confined to a pat-down of the outer clothing of the suspect. Only after the pat-down gives indication that a weapon is present do the police have the privilege to search further. See *Commonwealth* v. *Ballou,* 350 Mass. 751 (1966), cert. den. 385 U. S. 1031 (1967); *Commonwealth* v. *Hawkes,* 362 Mass. 786 (1973).

The crucial question here concerns the search of the automobile. It is settled in law that, in appropriate circumstances, a *Terry* type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end. See *Commonwealth* v. *Hawkes, supra; Adams* v. *Williams,* 407 U. S. 143, 146 (1972); *United States* v. *Green,* 465 F. 2d 620, 623-625 (D. C. Cir. 1972); *United States* v. *Cupps,* 503 F. 2d 277 (6th Cir. 1974); *United States* v. *Thomas,* 314 Atl. 2d 464 (Ct. App. D. C. 1974). The limitations are best described not only by the language of the *Terry* case, but also by the words of *Chimel* v. *California,* 395 U. S. 752, 763 (1969), which restricts search to the area "from within which . . . [the suspect] might gain possession of a weapon."

Here the search was confined to the area under the front seat of the vehicle. A pat-down of the defendent had already occurred and it disclosed no indication of a weapon on his person. It is true that the defendant was not in his automobile at the time that it was searched; he was in the police cruiser on his way to procure gasoline. Nevertheless, he was not in the custody of the police and could be

expected to reënter his vehicle very soon.[2] The defendant's female companion was in the driver's seat of the vehicle at all times but she was not known to the officers as a person of criminal tendencies. All these circumstances are to be considered in light of one officer's belief that the defendant may have concealed a gun under the seat.

Again the question is a close one. It can be argued with some persuasiveness that the defendant could hardly be viewed as a potential assailant after he had returned to his vehicle and knew that he had not been detained by the police. Once more, however, our appraisal is not controlled by hindsight knowledge that there was in fact no assault on the police officers. Rather, we are to ascertain whether there was reasonable ground for the police to apprehend danger to themselves from a gun lodged beneath the seat of the automobile. With their knowledge of the defendant's reputation it can be argued that they were even entitled for their protection, in this case, to expect the unexpected from the defendant. As was the case with respect to the initiation of the search, we need not decide whether the search beneath the seat was invalid because we have determined that the investigation of the object discovered beneath the automobile seat clearly exceeded the permissible limits of a protective search for weapons.

Therefore, assuming arguendo that the officers were entitled to conduct a frisk type search under the seat of the vehicle, our ultimate inquiry, and the one that is determinative of the case, is whether the police exceeded permissible limits in investigating the object discovered. More exactly stated, the issue is whether the police exceeded constitutional limits when they opened the object they found secreted under the seat. It is not crucial that no gun was found. If the drugs had come into plain view of the

[2] In *United States* v. *Thomas, supra,* at 467-468, the court held that the limited search of a car which resulted in the seizure of a pistol hidden behind the glove compartment was justified under the principles articulated in the *Terry* case despite the fact that the occupants had been ordered out of the vehicle.

police during an appropriately limited search, their seizure would have been constitutionally valid. *Harris* v. *United States,* 390 U. S. 234 (1968). *Coolidge* v. *New Hampshire,* 403 U. S. 443, 464-473 (1971). The police officers in that situation would have, with the help of prior experience, probable cause to believe that they had discovered narcotic drugs illegally held by the defendant, and could justifiably seize that contraband.

In this case, however, we hold that the police discovered the drugs by going beyond the scope of the frisk type of search sanctioned by *Terry* v. *Ohio, supra.* The searching officer observed the drugs, not in plain view, but only after he had unzipped a "little black packet" which contained the seventy-five small paper folders.[3] We have examined the packet and its contents. It is circular, black in color, of opaque plastic material, three inches in diameter and about one inch in depth. A zipper runs around almost its entire circumference. The packet together with its contents of seventy-five folders of heroin weighs no more than two ounces. It could not conceivably have contained a gun, nor could an officer reasonably have considered that it contained a dangerous weapon of any kind. The unzipping of the packet, and examination of its contents, were clearly a search for evidence rather than a protective search for weapons.

Since there was no probable cause for the search, and since the search of the plastic packet was likewise not justified by *Terry* principles, it follows that the defendant's motion to suppress the drugs from evidence should have been allowed. See *United States* v. *Collins,* 439 F. 2d 610, 617 (D. C. Cir. 1971). If the motion to suppress had been allowed by the hearing judge the Commonwealth's case as presented before the trial judge and jury would have been

---

[3] It is clear to us from the record that the drugs could be seen only after the policeman unzipped the packet, although the bill of exceptions contains some equivocal language on that issue. Even if the issue had been left conjectural, we would reach the same result, because the Commonwealth would have failed in its burden of justifying a warrantless search. *Commonwealth* v. *Antobenedetto, ante,* 51 (1974).

lacking in essential proof. Given that effect, the trial judge would have been compelled to allow the defendant's motion for a directed verdict. The defendant's motion for a directed verdict must now, therefore, be allowed and a judgment of not guilty must be entered. There is no necessity for us to discuss other exceptions of the defendant.

> *Exceptions sustained.*
> *Judgment for the defendant.*