COMMONWEALTH vs. RONALD P. CANTALUPO.

Suffolk.  December 4, 1979. — March 19, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*"Threshold" Police Inquiry.  Search and Seizure,* Consent.  *Constitutional Law,* Search and seizure.

Where it appeared that two police officers, specifically involved in the investigation of traffic in controlled substances, received information from an informant considered reliable that the defendant had a controlled substance in his possession and observed him walking and called to him to come to them, that after responding negatively to a question whether he was selling drugs he opened his jacket, said "search me," with a gesture indicating an invitation to search, and that one of the officers, known to the defendant, found a vial containing a controlled substance in his shoe warranted findings that the officers' actions were justified as a permissible threshold inquiry followed by a valid search within the scope of the defendant's consent. [175-179]

COMPLAINT received and sworn to in the District Court of Chelsea on November 22, 1977.

On appeal to the Superior Court a pretrial motion to suppress evidence was heard by *Lack*, J., and the case was ·heard by *Tuttle*, J., each a District Court judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Hans R. Hailey* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The defendant was arrested for unlawful possession of a controlled substance — ten tablets of lysergic acid diethylamide (LSD).  In the Superior Court the defendant's pretrial motion to suppress these tablets from evidence was denied after a hearing.  The motion to

suppress was renewed at trial and was again denied. The defendant, having waived a jury trial, was thereafter found guilty of unlawful possession of a controlled substance. See G. L. c. 94C, § 34. He received a suspended sentence of six months in the house of correction, Suffolk County, and was placed on probation for one year.

The defendant appealed by means of a bill of exceptions to the Appeals Court, which held that the motion to suppress was properly denied. *Commonwealth* v. *Cantalupo*, 7 Mass. App. Ct. 923 (1979). The defendant applied for further appellate review, and the case is before this court on the grant of that application.

We summarize the facts as taken from the bill of exceptions and the findings of the judge who heard the motion to suppress. State police Officer William Wise testified that on November 2, 1977, he and Revere police Officer Dennis Moschella were working together in plain clothes investigating illegal drug traffic in Revere. They drove in an unmarked car to an area in Revere near St. Anthony's Church where they received information from a person whom they considered to be a reliable informer. Acting on this information they proceeded to the rear parking lot of the Sunnyhurst Farm store on Revere Street, looking for the defendant. After a short wait, they observed the defendant walking in their direction. They called to him to come over to their car.

When the defendant came over to the car, both officers got out of the vehicle and Officer Wise asked the defendant if he was selling drugs. The defendant responded, "Are you kidding? Hey, I'm clean, search me," and with that he opened both sides of his jacket making a gesture indicating an invitation to the officers to search him. Officer Moschella, who was known to the defendant, performed the search. The officer found a small vial containing ten tablets of LSD in the defendant's left shoe.

The officers had neither an arrest warrant nor a search warrant for the defendant. They did not advise the defendant of any rights prior to the search. The defendant was not

arrested until approximately three weeks later, after an analysis of the pills had been made and a complaint obtained against the defendant.

The defendant argues that the search which yielded the vial of LSD violated his rights under the Fourth Amendment to the United States Constitution thereby rendering the LSD inadmissible as evidence at his trial. We agree with the ruling of the Appeals Court that the Commonwealth cannot show that the search was made on the basis of probable cause. See *Commonwealth* v. *Cantalupo*, 7 Mass. App. Ct. 923 (1979), and cases cited. Accordingly, the line of cases applying the probable cause plus exigent circumstances rationale to justify warrantless searches is inapposite here. See, e.g., *Chambers* v. *Maroney*, 399 U.S. 42 (1970); *Cupp* v. *Murphy*, 412 U.S. 291 (1973); cf. *Commonwealth* v. *Haefeli*, 361 Mass. 271 (1972). Nor was this search made incident to a valid arrest. *United States* v. *Robinson*, 414 U.S. 218 (1973). Therefore, we must decide whether the police officer's actions are justified as a permissible threshold inquiry followed by a search with consent.

We have consistently sustained the right of a police officer to make a threshold inquiry when the officer has reason to suspect that a person has committed, is committing, or is about to commit a crime. See *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974); *Commonwealth* v. *Anderson*, 366 Mass. 394, 397 (1974). In "stop and frisk" cases our usual inquiry is twofold: first, whether the threshold inquiry (the stop) was justified, and second, whether the scope of the search was justified by the circumstances. See *Commonwealth* v. *Silva, supra* at 405, 406 n.1.

We turn now to the first of these dual inquiries. "In following the constitutional standards of *Terry* v. *Ohio, supra,* we have required that the police officer's action be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience. A mere 'hunch' is not enough. Simple good faith on the part of the officer is not enough. The

test is an objective one." *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974).

We find that this constitutional standard was met in the instant case. Officers Wise and Moschella were specifically involved in the investigation of drug traffic in Revere. See *Commonwealth* v. *Silva,* 366 Mass. 402, 407 (1974) (officers entitled to apply their police experience to all the facts). They acted on information from an informant whom they considered reliable that the defendant had a controlled substance in his possession. This information was sufficient to justify the officers in calling the defendant to them and asking him whether he was selling drugs. See *Commonwealth* v. *Ballou,* 350 Mass. 751 (1966), cert. denied, 385 U.S. 1031 (1967) (threshold inquiry upheld where police had received anonymous telephone tip that defendant was in a certain café in possession of a gun); *Commonwealth* v. *Anderson,* 366 Mass. 394 (1974) (threshold inquiry upheld where police had received anonymous note describing man in bus terminal and saying that he was armed and possessed narcotics).

Our second inquiry is whether the scope of the warrantless search was justified by the circumstances. Because the police had no reason to suspect that the defendant was armed and dangerous, the search cannot be justified as a protective weapons search incidental to the initial stop.[1] See *Terry* v. *Ohio,* 392 U.S. 1, 24-27 (1968); *Commonwealth* v. *Silva,* 366 Mass. 402, 407 (1974). The Commonwealth relies instead on the defendant's consent to justify the search.

---

[1] It should be noted that in a "stop and frisk" analysis the question whether the police have reason to believe that the suspect is armed and dangerous is relevant only to the issue of whether the frisk (protective weapons search) was justified. No suspicion of danger is required to justify the stop. The police need only have reason to suspect criminal activity in order to stop the suspect. This is made clear in *Commonwealth* v. *Mathews,* 355 Mass. 378, 381 (1969), where we held that "it was reasonable for the officer to stop and briefly interrogate a man who, while carrying a bag with a department store label, was walking at two fifty in the morning in an area where there had recently been several incidents of breaking and entering." See also *Commonwealth* v. *Ling,* 370 Mass. 238 (1976), in which we upheld an investigatory stop of a motor vehicle on suspicion that the occupants were departing the scene of a burglary.

"When the Commonwealth relies on consent as the basis for a warrantless search, it must demonstrate 'consent unfettered by coercion, express or implied, . . . [which is] something more than mere "acquiesence to a claim of lawful authority" (citation omitted).' *Commonwealth* v. *Walker,* 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976). See *Bumper* v. *North Carolina,* 391 U.S. 543, 548-549 (1968); *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). Voluntariness of consent 'is a question of fact to be determined in the circumstances of each case . . . .' *Commonwealth* v. *Aguiar,* 370 Mass 490, 496 (1976)." *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978).

The hearing judge found that "the defendant freely and voluntarily gave the officers his consent to be searched." See *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227-229 (1973). There is ample support in the record to warrant the judge's findings.[2] See *Commonwealth* v. *Harmond,* 376 Mass. 557, 561-562 (1978); *Commonwealth* v. *Cruz,* 373 Mass. 676, 682 n.3 (1977); *United States* v. *Ciovacco,* 518 F.2d 29, 30-31 (1st Cir. 1975). "The defendant's claim that his apparent consent was involuntary should be carefully scrutinized to avoid giving him an unfair advantage." *Commonwealth* v. *Harmond, supra* at 562. *United States* v. *DiPrima,* 472 F.2d 550, 551 (1st Cir. 1973).

In the instant case the defendant initiated the search by opening his jacket, saying "search me" and making a gesture indicating an invitation to the officers to search him.[3] The

---

[2] The defendant presented his own version of the episode which conflicted in part with the version given by the police and accepted by the judge. The defendant's version did not involve a denial that he consented to the search, but merely added a claim that he was deceived into giving his consent by Officer Moschella's ruse that he was conducting a survey. We find this story no more credible than the judge found it, particularly in light of the fact that the defendant admitted that Officer Moschella was known to him. Moreover, the defendant's endorsement of the officers' description of his words and gestures of consent serves to bolster the credibility of their statements.

[3] The explicit nature of the defendant's consent distinguishes the instant case from *Commonwealth* v. *McGrath,* 365 Mass. 631 (1974), in which

officers had made no threats to the defendant, but had simply beckoned him and asked a single question when he offered his invitation to search. The defendant was not placed in any coercive circumstances or even taken into custody at the time that he invited the search. Cf. *Commonwealth* v. *LaBriola*, 370 Mass. 366, 367 (1976); *United States* v. *Watson*, 423 U.S. 411, 424-425 (1976). The fact that the police did not explain the right of the defendant to refuse to consent to a search is a factor to be considered in assessing the voluntariness of the consent, but it is not conclusive. *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 248-249 (1973). *Commonwealth* v. *Harmond*, 376 Mass. 557, 561 (1978). *Commonwealth* v. *Walker*, 370 Mass. 548, 555 (1976).

The defendant maintains that, even if he voluntarily consented to be searched, he consented only to a search of the area above his belt, thereby rendering the search of his shoe an intrusion beyond the scope of the consent. Because consent can legitimize what would otherwise be an unreasonable and illegal search, a search with consent is reasonable and legal only to the extent that the individual has consented. See *Commonwealth* v. *Garreffi*, 355 Mass. 428 (1969); *United States* v. *Dichiarinte*, 445 F.2d 126 (7th Cir. 1971); *United States* v. *DeMarsh*, 360 F. Supp. 132, 136 n.3 (E.D. Wis. 1973); *People* v. *Superior Court*, 10 Cal. App. 3d 122, 127 (1970). What, if any, limitations on the consent are implied by the language or conduct of the consenting party is a question in the first instance for the judgment of the police officers to whom the consent is given. The ultimate question is whether, in light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver. *State* v. *Koucoules*, 343 A.2d 860, 866-867 (Me. 1974).

we found that the suspect's words, "I'm clean this time," spoken while spreading his hands out did not amount to an invitation to search him for drugs. In contrast to the instant case, the words of the suspect in *McGrath* imported no invitation at all, and even in combination with the gesture, they were at best equivocal.

In the instant case, the defendant's words placed no limitations on the scope of the search to which he was consenting. Moreover, we fail to see how the defendant's opening of his jacket serves to limit the scope of the consent to the top half of his body. There was no evidence that he objected to any part of the search, including the search of his shoe. It is significant that the officers suspected the defendant of drug possession and that he understood this at the time he consented to be searched. It was thus reasonable for the officers to assume that the defendant was consenting to a search of his person consistent with an effort to locate drugs. See *State* v. *Koucoules, supra* at 868. Because it is by no means extraordinary for such a substance to be concealed in one's shoe, the police officers were clearly warranted in their belief that the defendant's consent included that area.

Because the actions of the police officers constituted a lawful threshold inquiry followed by a search with valid consent, no rights of the defendant were violated by them in obtaining the LSD, and it was properly admitted in evidence.

*Exceptions overruled.*