**UNITED STATES of America**

v.

**Randall AUSTIN Defendant.**

**No. CRIM.A.02–592.**

United States District Court,
E.D. Pennsylvania.

June 24, 2003.

Pedro De La Torre, Esquire, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Edson Bostic, Esquire, Federal Defender's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

The defendant Randall Austin is charged with one count of felon in possession of a firearm and two counts of false statements in acquisition of a firearm. The defendant now moves to suppress the introduction into evidence of a .357 Glock 32 automatic and a clip with ten rounds as well as post-arrest statements admitting ownership of the weapon. Police seized the gun and ammunition following a search of defendant's car on February 17, 2002.

Upon consideration of the submissions of the parties, and after a hearing on June 23, 2003, the court ruled from the bench that the evidence would be suppressed. The court now writes briefly to supplement that ruling.

*Findings of Fact*

1. On February 17, 2002 at approximately 7:50 p.m., Philadelphia Police Officers Darren Williams and Patrick Curley observed a silver Mercedes Benz CLK–320 disregard a red light at Lancaster Avenue and 52nd Streets. The police officers stopped the car driven by the defendant for this traffic violation and not because of his race.

2. After the officers stopped the car just south of the intersection at the 1400 block of 52nd Street, Randall Austin, the vehicles driver, opened the door and began to exit the vehicle.

3. The officers ordered Austin to remain seated in the car, and Austin complied with their request.

4. Officer Williams approached the vehicle on the driver's side, and Officer Curely approached the passenger side. Office Williams asked the driver for his license, registration, and insurance card. Austin reached over into the glove compartment, retrieved a temporary registration card in the name of his mother, Darlene Caster, and handed the card to Officer Williams along with his license.

5. The police officers then asked the defendant where he was driving, and Austin replied that he was taking the female passenger to the hospital in an attempt to explain his haste. The officers informed Austin that the nearest hospital was in the opposite direction.

6. After the defendant gave Officer Williams his license and registration, Austin attempted to exit the vehicle while reaching down under the driver's seat with his right hand. Concerned for his safety, Officer Williams grabbed Austin's arm. At this point, Officer Williams observed that Austin had reached for his cell phone.

7. Officer Curley came around the vehicle to assist Officer Williams. As Officer Williams grabbed the defendant's arm, the adrenalin understandably kicked in. The officers pulled the defendant out of the car, handcuffed him, and placed him in the back of the police car.[1] The defendant was understandably nervous as he was pulled out of the car and frisked but he did not resist nor was he violent. He had no weapon on his person.

8. The officers knew that Austin had reached for a cell phone, not a weapon, before they searched the vehicle, and there was no reason to believe that they were dealing with an armed or dangerous individual. The danger had passed when Officer Williams observed the cell phone prior to the search.

9. Officer Williams' credibility is subject to question because of his demeanor, evasiveness about the prior complaints and suspensions against him, and the inconsistencies between his preliminary hearing testimony and his testimony at trial. Officer Curley tailored his testimony to that of Officer Williams.

10. After placing the defendant in the police car, Officer Curley conducted a search of the interior of the vehicle. In the center console the officer found in the center console a Glock, Model 32, .357 semi-automatic handgun, loaded with one round in the chamber and a full 10 round

magazine, and an additional magazine containing 10 rounds of ammunition.

11. The police informed the defendant that they had found a weapon in his vehicle. Without giving the defendant Miranda warnings, the police asked the handcuffed defendant about the gun's ownership. Austin stated that the weapon was his, and that he had a permit to carry a firearm but had left the paperwork at home. Austin then stated that he was returning from the firing range. Subsequent investigation determined that the defendant had illegally purchased the handgun on February 11, 2001, at Lou's Loans of Upper Darby.

*Conclusions of Law*

 1. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Ordinarily, it is the defendant's burden to show that evidence should be suppressed. *See United States v. Acosta,* 965 F.2d 1248, 1256 n. 9 (3d Cir.1992) (citations omitted). However, when, as in this case, the police conducted the search and seizure without a warrant, "the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995).

 2. Unless there is an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law," the Supreme Court has held that it is unreasonable under the Fourth Amendment for police to stop a vehicle to check a driver's license and reg-

---

**1.** I do not credit the testimony that defendant refused to keep his hands on the car or looked furtively into the car after the police removed him. Rather, these are fictions contrived to justify the search. Defendant was indeed nervous after he was removed from the car. However, he complied with the directions of the police.

istration. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Although Austin argues that the initial stop was a result of racial profiling, the police observed Austin commit a traffic violation when he failed to stop at a red light. Because the police stopped Austin's vehicle following a traffic violation, the initial police stop did not violate the Fourth Amendment.

■■■ 3. Austin also argues that the subsequent search of his vehicle violated his Fourth Amendment rights against unreasonable searches and seizures. In *Terry v. Ohio*, the United States Supreme Court held that a police officer may conduct a brief investigatory stop when the officer has a reasonable suspicion that criminal activity is afoot. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In performing a *Terry* stop, a police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at 27, 88 S.Ct. 1868. As the Court explained,

> [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion, or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* When evaluating the justification for a *Terry* stop, a court must consider "the totality of the circumstances." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir.2000).

■ 4. In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court extended *Terry*'s holding to include police searches of an automobile's passenger compartment. According to the Supreme Court,

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049, 103 S.Ct. 3469 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868). Under *Long*, police may search a suspect's vehicle even though the individual is not under arrest. The Supreme Court reasoned "[i]f a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested." *Id.* at 1049–50, 103 S.Ct. 3469.

■ 5. In this case, the police point to the defendant's attempts to exit the vehicle while reaching under his seat, and the defendant's nervous and uncooperative behavior. Nervousness alone is not enough to establish reasonable suspicion. *See United States v. Wood*, 106 F.3d 942, 947 (10th Cir.1997) ( "It is certainly not uncommon for most citizens—whether innocent or guilty—to exhibit signs of nervousness when confronted by a law enforcement officer"). However, the Supreme Court has noted that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). *See also United States v. Woodrum*, 202 F.3d 1,. 7 (1st Cir.2000) ("[S]louching, crouching, or any other arguably evasive movement, when combined with other

factors particular to the defendant or his vehicle, can add up to reasonable suspicion.").

6. Other appellate courts have considered a defendant's nervous or evasive behavior when determining whether an officer had reasonable suspicion to perform a *Terry* stop. *See United States v. Valentine,* 232 F.3d 350, 357 (3d Cir.2000) (finding reasonable suspicion after officers received a face-to-face tip in a high crime area, witnessed defendant and his two companions walk away when they noticed the police car, and the defendant ran towards police after being ordered to stop); *United States v. Brown,* 188 F.3d 860, 864–65 (7th Cir.1999) (finding reasonable suspicion existed where the defendant's car was the subject of FBI surveillance, the defendant's unusually nervous manner and glances back to his car, the smell of marijuana from the car, the fact that the other occupants of the car rolled down the tinted windows during the traffic stop, and the fact that the stop occurred in a high crime area); *United States v. Cummins,* 920 F.2d 498, 502 (8th Cir.1990) ("The officer had observed and could articulate (1) the defendants' peculiar behavior at the traffic light; (2) their attempts to evade his surveillance by pulling into the closed car wash; (3) their continuous furtive glances in his direction; (4) the nervous and evasive behavior of each defendant when asked routine questions; and (5) the inconsistent answers concerning [an occupant's] identity. The totality of the circumstances known to [the officer] met the requisite level of reasonable suspicion ...."); *United States v. Maestas,* 941 F.2d 273, 277–78 (5th Cir.1991) (holding no Fourth Amendment violation where a burglary suspect identified by burglary victim appeared aggressive and intoxicated and, after returning to his vehicle, leaned forward, possibly to grasp a weapon under his seat).

7. In *United States v. Moorefield,* 111 F.3d 10 (3d Cir.1997), the Third Circuit found that the police had reasonable suspicion to search an uncooperative passenger who made suspicious hand movements. In *Moorefield,* the police stopped a vehicle for a traffic violation. The defendant attempted to exit the vehicle and the police ordered him to remain in the car with his arms in the air. Moorefield did not comply with the request and instead leaned back and shoved something down toward his waist. After the officer directed the defendant to show his hands, the defendant pushed his upper-body out of the window. The officers again asked Moorefield to remain in the car with his hands in view. At this time the defendant raised and lowered his hands several times before finally keeping them in the air. Based on these suspicious hand movements, the officer testified that he believed Moorefield may have been trying to conceal a weapon or narcotics. Finding that the Moorefield's "furtive hand movements and refusal to obey the officers' orders constituted suspicious behavior," the Third Circuit upheld the search. *Id.* at 13. Although the officers were not certain the defendant had a weapon, the Third Circuit reasoned that the police were warranted in their belief that their safety was in danger.

8. Another circuit court has found reasonable suspicion based only on suspicious hand and body movements. In *United States v. Colin,* the Fifth Circuit upheld a police search of a defendant and his vehicle where the defendant made suspicious movements prior to stopping his vehicle. 928 F.2d 676 (5th Cir.1991). The police officer in *Colin* observed the defendant swerve in front of the police car while driving without a seatbelt. As the car came to a stop, the police officer observed the defendant "stooping down and moving side to side." *Id.* at 678 (citations omitted). The Fifth Circuit found that this

evasive and suspicious movement formed the basis for reasonable suspicion that the suspect was armed and dangerous.[2] *Id.* Therefore, the court reasoned that the officer did not violate the defendant's Fourth Amendment rights.

■ 9. Although similar, the case at bar is distinguishable from both *Moorefield* and *Colin.* In *Colin,* the police officer observed the defendant move in a suspicious manner as if to hide a firearm or illegal contraband. The defendant in *Moorefield* disobeyed police orders to remain in the vehicle three times while suspiciously moving his hands as if to conceal something. Here, Austin attempted to exit the vehicle and reached beneath his seat. However, before removing the defendant from the vehicle to perform a search, Officer Williams grabbed the defendant's hand and saw that Austin had reached for a cell phone. When conducting a *Terry* stop, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Therefore, Officer Williams was justified in reaching into the car and grabbing the defendant's arm to dispel his suspicions that Austin had reached for a weapon. However, when Officer Williams realized that Austin had reached for a cell phone, not a weapon, there was no reason to believe that he was dealing with an armed or dangerous individual. The officers' actions thereafter were understandably based on the continued rush of adrenalin, but there was no basis for reasonable suspicion that the defendant had a weapon

on his person or in his vehicle. Defendant was also understandably nervous after the encounter over the cell phone, but he was not violent.

■ 10. According to the government, the defendant's nervous behavior and the defendant's efforts to reach beneath his seat for a cell phone created reasonable suspicion. However, these factors, independently as well as combined, do not amount to reasonable suspicion. As the Tenth Circuit noted, it is not uncommon for people to exhibit signs of nervousness in front of a police officer. *Wood,* 106 F.3d at 947. Furthermore, "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Under the totality of the circumstances, the government has failed to show that there was reasonable suspicion to search the defendant and the vehicle. Therefore, the gun and ammunition are suppressed.

■ 11. Because the defendant's post-arrest statement is fruit of the poisonous tree, *see Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the statement admitting ownership of the gun is suppressed.

*Conclusion*

Because the police recovered the gun and ammunition from defendant's vehicle pursuant to an unauthorized search, the defendant's motion to suppress is granted.

An appropriate order follows.

---

**2.** In coming to this conclusion, the Fifth Circuit cited *United States v. Ullrich,* 580 F.2d 765, 769 (5th Cir.1978). In *Ullrich,* the police upheld a protective search of a defendant who ("procrastinated before opening the glove compartment and then simultaneously reached under the seat of the car ....''). In addition to these suspicious movements, however, a salesclerk had identified the defendant as an individual using a stolen credit card to make purchases.

## ORDER

**AND NOW**, this 24th day of June, 2003, it is hereby **ORDERED** that the defendant's motion to suppress is **GRANTED**.