COMMONWEALTH *vs.* EUGENE THOMAS.

No. 05-P-520.

Suffolk. September 20, 2006. - November 15, 2006.

Present: RAPOZA, C.J., LAURENCE, & GRAINGER, JJ.

*Firearms. Evidence,* Firearm. *Constitutional Law,* Search and seizure. *Search and Seizure,* Consent.

A Superior Court judge erred in denying the criminal defendant's motion to suppress evidence discovered in his apartment immediately after his arrest, where any consent arguably provided by the defendant in asking two police officers to lock the front door of the apartment was impliedly limited to the police officers looking only for a key to the door, and only where it reasonably could be found, and where the scope of any implied consent was further limited by the fact that there was opportunity for one officer to remain at the unlocked door for a brief interval while the other followed the defendant to a police cruiser to ask for the location of the key. [740-743]

INDICTMENTS found and returned in the Superior Court Department on June 24, 2003.

A pretrial motion to suppress evidence was heard by *Janet L. Sanders,* J., and the cases were tried before *Peter M. Lauriat,* J.

*Edward B. Fogarty* for the defendant.

*Paul B. Linn,* Assistant District Attorney (*Holly Broadbent,* Assistant District Attorney, with him) for the Commonwealth.

GRAINGER, J. The defendant was convicted of offenses arising from a response by two Boston police officers to a report of domestic violence.[1] At issue in this appeal are the defendant's convictions of possession of a firearm without an identification

---

[1] The defendant was convicted of four offenses. He did not brief any issue in conjunction with his conviction for assault and battery. Any appeal from that conviction is waived and the judgment is affirmed. *Commonwealth* v. *Appleby,* 389 Mass. 359, 380, cert. denied, 464 U.S. 941 (1983). Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

card and possession of ammunition without an identification card in violation of G. L. c. 269, § 10(*h*), as amended by St. 1998, c. 180, § 69.[2] We are called upon to decide whether discovery of these items by the responding officers while searching for a key to lock the defendant's apartment pursuant to his request violated his rights under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights. Additionally, the defendant has disputed the classification of a handgun secured with a trigger lock as a "firearm" for purposes of G. L. c. 269, § 10(*h*), and he contests the finding that he had constructive possession of the handgun found in his apartment. Because we conclude that the warrantless search of the defendant's apartment exceeded the scope of any arguably implied consent created by his request to lock the front door, we do not address the trigger lock or constructive possession issues.[3]

*Background.* The defendant moved to suppress evidence discovered in his apartment immediately after his arrest on an assault and battery charge. The motion judge made the following findings of fact, which are not contested by the defendant and are, in any event, amply supported by the record.

Around 11:00 A.M. on April 22, 2003, two Boston police officers responded to a report of domestic violence at an address in the Dorchester section of Boston. Upon arrival, the officers met two women outside who identified themselves as the ones who had called the police. One woman, who was visibly upset and had redness around her eye, told the officers that she had

---

[2]The indictment charging possession of a firearm without an identification card included a count for violating G. L. c. 269, § 10G, inserted by St. 1998, c. 180, § 7 (armed career criminal). The trial judge, proceeding without a jury, found the defendant guilty of this charge and sentenced him accordingly. Because we reverse the jury verdicts here and dismiss the indictments for possession of a firearm without a license, the judge's finding pursuant to G. L. c. 269, § 10G, is also reversed and this indictment is also dismissed.

[3]But see *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 220 (1950) (gun constitutes "firearm" for purposes of G. L. c. 269, § 10[*h*], where "a relatively slight repair, replacement, or adjustment [would] make it an effective weapon"); *Commonwealth* v. *Raedy*, 24 Mass. App. Ct. 648, 653-654 (1987) (incorrectly aligned sear spring); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 402-403 (1998) (broken firing pin).

had an argument with her boyfriend and he had struck her. She directed the officers to her boyfriend's apartment.

The officers knocked on the apartment door, and the defendant answered. The victim, standing nearby, identified him as the man who had struck her. Meanwhile, two other officers arrived on the scene. The defendant denied the accusation, and the officers asked if they could look around to see if anyone else was in the apartment. The defendant agreed, and the officers found no one else there. The victim again identified the defendant as her assailant, and the officers arrested him for assault and battery.

As two officers led the defendant out of the apartment, he yelled over his shoulder to the two remaining officers to lock the door before they left. In attempting to comply, the officers realized that the door would not lock without a key. While one officer looked around the apartment for a key, the other went outside to the police cruiser to ask the defendant where he kept the key. The defendant told him that the key was hanging on a hook in a closet, and that he had a BB gun with sentimental value in another closet.

The officer who had remained in the apartment looked on the living room table and in the kitchen for the key. He then proceeded to the bedroom and opened the top drawer of the bureau and the drawer on the nightstand. In the nightstand he found a handgun. At about that time, the officer who had gone to the cruiser returned to the apartment to retrieve the key from the closet, where the defendant had said it would be. In a back closet the officers found what they believed was a .22 caliber rifle.[4] They seized the weapons, took photographs of the areas where the weapons had been, and locked the apartment using the defendant's key.

*Discussion.* The defendant claims that his motion to suppress the evidence of the handgun should have been allowed because he had never given the police consent to search his apartment. The motion judge determined that the police discovered the handgun in areas that could reasonably be expected to contain personal effects, including house keys. We conclude otherwise.

---

[4]The rifle turned out, on further examination, to be the defendant's BB gun. His possession of the BB gun is not at issue.

Under the circumstances of this case, the officer's search of a nightstand drawer in the defendant's bedroom exceeded the reasonable scope of any arguable consent to search implied by the request to lock the door to the apartment. These circumstances include not only what the officers could reasonably have understood the defendant's request to mean, but also the fact that two officers were present to carry out the request. This additional factor provided the opportunity, which was taken, for one officer to ask the defendant where he kept his house keys while the second one waited at the entrance. We conclude that these circumstances overcome the deference to which the motion judge's conclusion is entitled. Whether or not the defendant's request could reasonably be understood to constitute consent to search inside the apartment, it could not reasonably be understood to include opening the drawers in his bedroom.

A determination of the scope of consent is necessarily dependent on the particular facts of each case. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment [to the United States Constitution] is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Commonwealth* v. *Gaynor,* 443 Mass. 245, 255 (2005), quoting from *Florida* v. *Jimeno,* 500 U.S. 248, 251 (1991). The limitations implied by the defendant's language or conduct are questions "in the first instance for the judgment of the police officers to whom the consent is given. The ultimate question is whether, in light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver." *Commonwealth* v. *Hinds,* 437 Mass. 54, 59 (2002), cert. denied, 537 U.S. 1205 (2003), quoting from *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 178 (1980).

Only one case has been brought to our attention in which a defendant asked the police to lock his residence after the defendant's arrest. In *United States* v. *Phelps,* 168 F.3d 1048, 1057 (8th Cir. 1999), the court considered the defendant's request to the police officer to secure the premises with the words, "[I]f anybody is in there, I want them out of my house." There, the defendant clearly gave the officer consent to look

through the house in places where he reasonably could expect to find a person. In walking through the house looking for a person, the officer saw two shotguns and some shotgun shells in plain view. The court admitted the shotguns and shells in evidence because the defendant had consented to the officer's presence and the officer was looking in places where he could reasonably expect to find persons when he found the shotguns. *Ibid.*

In the same vein, it is apparent from the record here that the implied limitation to any consent arguably provided by defendant was that the officers look only for the key, and only where it would reasonably be found. Several variables determine the reasonableness of any particular interpretation of the defendant's request in the circumstances of this case. Even if it were proper for the officers, or one of them, to step into the apartment and look in such locations as the lock on the inside of the front door, a hall table, or on a hook near the entrance, progressing from this scenario to the next stage, opening drawers or looking into closed containers, is a tenuous construal of the defendant's request. In the same sense, moving further away from the front door and deeper into the interior of the premises necessarily implicates greater expectations of privacy and reduces the reasonableness of assuming that these areas were within the scope of any arguably implied consent. It is pertinent in this context to note that even while these circumstances, theoretically, provided justification for a limited search, the underlying impetus of the defendant's request was to protect his abode from any intrusion.

As noted above, the circumstances in this case also include the fact that the defendant's request was addressed to two police officers. Just as the scope of consent limits a police officer's search to one which complies with the commonly understood meaning of the words used to give consent, *Commonwealth* v. *Cantalupo, supra* at 178, here any implied scope was limited to acts reasonably necessary to comply with the defendant's oral request to lock the apartment. We therefore consider that there was opportunity for one officer to remain at the unlocked door for a brief interval while the other followed the defendant to the

cruiser to ask for the location of the key (as in fact occurred).[5] While it was not per se unreasonable for the remaining officer to look about in the vicinity of the door, the anticipation of the other officer's imminent return with knowledge of the key's location is a factor that further limited the scope of any implied consent.

In light of all the circumstances, we conclude that searching the defendant's bedroom, and opening drawers in furniture located in the bedroom, exceeded any consent by the defendant to a warrantless search, rendering the handgun inadmissible.

*Conclusion.* The judgment on the indictment charging assault and battery is affirmed. The denial of the defendant's motion to suppress is reversed and a new order is to enter allowing the defendant's motion to suppress. As to the indictments charging possession of ammunition without an identification card, possession of firearm without a identification card, and armed career criminal based on possession of a firearm, the judgments are reversed, the verdicts set aside, and judgments are to enter for the defendant.

*So ordered.*

---

[5]The record does not reveal whether any of the officers carried hand radios or walkie talkies.