Rubin, J.
(concurring in the judgment, with whom Hines, J., joins). Although we agree that the order allowing the motions to suppress must be reversed, and with the majority’s method of analysis, we write separately to state explicitly that, in the context *413 of a lawful automobile stop, before police officers may, under art. 14 of the Massachusetts Declaration of Rights, undertake a Terry-type search, or “patfrisk,” of the interior of a motor vehicle, see Terry v. Ohio, 392 U.S. 1, 27 (1968), they must have not only reasonable suspicion that an occupant is armed and dangerous, but also reasonable suspicion “based on specific, articulable facts that there might be [a] weapon[ ] in the vehicle.” Commonwealth v. Johnson, 82 Mass. App. Ct. 336, 342 (2012). And, as we explain, because we would not hold as the majority does that the motion judge erred in determining that during the time Johnson and Steed were outside the vehicle, the reasonable suspicion they were armed and dangerous dissipated, we necessarily reach the conclusion that the order must be reversed through a somewhat different route than the majority.
It is “settled that in appropriate circumstances a Terry type search may extend into the interior of an automobile.” Commonwealth v. Almeida, 373 Mass. 266, 270 (1977). The authority for such a further intrusion into an individual’s privacy must be evaluated based on all the facts and circumstances. It does not necessarily arise whenever there is reasonable suspicion warranting a patfrisk of someone in a car. In order to be lawful, a search or seizure must be tailored to its justification. See, e.g., Commonwealth v. Silva, 366 Mass. 402,407-408 (1974), quoting from Terry v. Ohio, 392 U.S. at 19 (A “search must be ‘strictly tied to and justified by’ the circumstances which rendered its initiation permissible. ... [A permissible] search is thus confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered”). Thus, as the leading treatise on the law of the Commonwealth with respect to suppression states, “[t]he scope of a frisk is circumscribed by the rationale for the frisk.” Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 5-4[a], at 5-12 (2014). “[E]yen a patfrisk that is ‘valid in its inception’ may be ‘excessive in its scope.’ ” Commonwealth v. Cruz-Rivera, 16 Mass. App. Ct. 14, 18 (2009), quoting from Commonwealth v. Silva, supra at 407. Therefore, as this court has recently explained, if in all the circumstances there is “no reasonable concern based on specific, articulable facts that there might be weapons in [a] vehicle,” a search of its interior is not permitted. Commonwealth v. Johnson, 82 Mass. App. Ct. at 342. Consistent with this, even when our appellate courts have concluded that an initial patfrisk of an occupant of a car was lawful, they have analyzed separately the *414 question whether a further protective search of the passenger compartment of the car is within the permissible scope of that search, asking whether such a search was justified by reasonable suspicion that the suspect might gain control of a weapon from within the car and use it against the officers. See, e.g., Commonwealth v. Silva, 366 Mass, at 407-408; Commonwealth v. Cruz-Rivera, 76 Mass. App Ct. at 18. See also Commonwealth v. Silva, supra at 408 (further search of car is permitted only where it will serve “a protective end”).
Because the facts that justify a patfrisk of the occupant of a car may not justify a further search of it, there may be circumstances, as the majority explains, where a lawful patfrisk that reveals nothing dispels what reasonable suspicion there was, so that a further search of the car will be impermissible.
Imagine, for example, that a police officer stops a car for speeding with no reason to think the driver is dangerous. The officer goes to the driver’s window and sees under the driver’s jacket what he thinks is a holster. Assuming that provides a sufficient basis for reasonable suspicion that the driver is armed and dangerous, the officer might permissibly order the driver out of the car and frisk him in order to allow the officer to “quickly confirm or dispel [his] suspicion.” United States v. Place, 462 U.S. 696, 702 (1983). See Commonwealth v. Pagan, 440 Mass. 62, 68 (2003) (“The purpose behind the protective measures allowed by Terry is to enable an officer to confirm or dispel reasonable suspicions that the stopped suspect may be armed with a weapon”). If the patfrisk reveals the driver is wearing not a holster, but a back brace, the officer’s suspicion will be dispelled. There would no longer be any basis for suspicion of the driver, and a further search of the car would be impermissible. Cf., e.g., United States v. Austin, 269 F. Supp. 2d 629, 634 (E.D. Pa. 2003) (where officer’s suspicion justifying patfrisk was based solely on his belief driver reached for weapon, search of car unlawful because once officer “realized that [the defendant] had reached for a cell phone, not a weapon, there was no reason to believe that he was dealing with an armed or dangerous individual”).
Of course, in many cases, the same facts that give rise to reasonable suspicion the occupant of a car is armed and dangerous will justify a Terry-type search of the interior of the car.[1] There will be reasonable suspicion not merely that the occupant *415 is carrying a weapon on his person, but that, even if he is not carrying a weapon on his person at the time of the patfrisk, he may have one in the car. In such circumstances, absent some other development, a patfrisk of the individual that reveals nothing will not dispel the officer’s reasonable suspicion. And, as the majority explains, in these circumstances, a protective search of the car may be permissible even if the individual is to be allowed to go on his way. See, e.g., Commonwealth v. Almeida, 373 Mass, at 272 (allowing “frisk” of car where defendant “was not under arrest at the time of the ‘pat-down’ search of his person, and there was no assurance that he would not be returning promptly to his seat behind the wheel of the automobile”).
The majority concludes that there was reasonable suspicion that Johnson was armed and dangerous — that he either had a weapon on his person, or had one in the car — at the point at which Johnson pivoted toward the center of the back seat of the car. The majority concludes that in this case, the suspicion was not dispelled by the patfrisk of Johnson that revealed no weapon. Likewise, the majority concludes that Steed’s own conduct, including “sitting in the vehicle in a manner that suggested that he might have a weapon in the pocket of his sweatshirt,” ante at 410, something observed after Johnson was removed from the car, created at that point reasonable suspicion that he was armed and dangerous and that he had a weapon either on his person or in the car. This suspicion, too, the majority concludes, was not dispelled by the patfrisk that found nothing. Finally, the majority says that Douglas’s conduct only “heightened the reasonable suspicion that the occupants of the vehicle were armed and dangerous,” ante at 410, implying that he might have been thought to have a weapon on his person or in the car based only on the suspicion that attached to the other two. The suspicion of Douglas, the majority concludes, also was not dispelled by the patfrisk of Douglas that found nothing. The majority thus holds that, with or without the circumstances that later arose, there was suspicion of each occupant at the time of his exit order sufficient to justify the search of *416 the car, and that, with respect to each, the patfrisk did not serve to dispel that suspicion. “[T]he protective frisk of the interior of the vehicle was justified by the reasonable suspicion that permitted the officers to issue the exit order and pat frisk the occupants.” Ante at 412.[2]
We agree that at the time of the search the officers in this case had reasonable suspicion based on articulable facts that the car may have contained a weapon, and that the search of the car’s interior therefore was justified. But we do not base our conclusion on the initial suspicion aroused by either Johnson or Steed. The experienced motion judge concluded that at the time of the stop, the police had insufficient facts to support an exit order or a patfrisk of any of the occupants of the car. She concluded that Johnson’s movements toward the center of the back seat warranted the order that he exit and his patfrisk. But she found as a fact that after finding nothing on Johnson’s person, the police “concludfed] that what Johnson was in fact doing inside the car was removing his seatbelt” •— as one officer testified, they determined the actions that had made them suspicious had been “innocent.” The judge thus held that in light of this, Johnson’s actions gave the police no basis to search the car.
Given the judge’s finding of fact, it is difficult to conclude that her legal determination was in error. We need not decide the question, however, because even assuming she was correct to this point, we think the suppression motion still should have been denied.
The judge also concluded that Steed’s behavior, particularly, when the officers approached the vehicle, his having his hands outside the front pocket of his sweatshirt, apparently, according to Officer Liam’s testimony “as if they were clutching something,” provided the officers with reasonable suspicion only that, as he sat in the car, he was holding a weapon in the front pocket of his *417 sweatshirt.[3] The motion judge concluded that this justified the order that he get out of the vehicle and a patfrisk of his person, but when the patfrisk revealed that he did not in fact have a weapon on his person, what suspicion there had been was dispelled. She held that his actions, too, thus provided no basis for the police to search the car. The majority concludes this, too, was error. That also is a difficult position to maintain, but we again need only assume, without deciding, that the motion judge’s conclusion was correct.
For the reasons described by the majority, the exit orders directed to, and the patfrisks of, Johnson and Steed were permissible. While Johnson and Steed were out of the vehicle, Douglas came out of the car unbidden. There is evidence that earlier on the evening in question Douglas was “agitated,” and that at the time of the stop he was acting unlike his usual “very casual,. .. calm” self. The officer ordered him back into the car, and he complied. But after being ordered back into the car and returning to it, Douglas put the vehicle in gear as if to drive away and said something to the driver. He did so while his fellow passengers were outside the car and a police officer was standing next to it, between it and the jersey barrier.
When, at 3:00 a.m., a passenger in a stopped vehicle who has been in attendance at a gang party and has a violent criminal record including a firearm offense leaves a vehicle unbidden to confront an officer occupied with a lawful patfrisk, it is reasonable for the officer to fear for his safety. And, although the driver kept her foot on the brake, by subsequently shifting the car into gear, Douglas actually manifested a serious threat to officer safety. His attempt to flee — done in the knowledge he was well-known to the officers, and so likely would later be found, and that his friends were outside the vehicle and would be left behind — made it reasonable to suspect that there was something in the car or on his person Douglas did not wish the police to see, *418 most likely a firearm, since he had been convicted previously of a firearms offense, and was recently socializing with gang members.
With reasonable suspicion that Douglas had a weapon either on his person or in the car, an exit order and a patfrisk extending into the interior of the car were justified. A patfrisk of Douglas’s person that revealed no weapon could not — and therefore did not — dispel the officer’s reasonable suspicion that Douglas was armed and dangerous. A protective search of the interior of the car, limited to the area from which Douglas might have gained possession of a weapon upon his return to the car, was justified notwithstanding the negative result of the patfrisk of his person. The gun was found under his seat, in that area.
For these reasons, while we agree with both the majority’s method of analysis and its result, we concur only in the judgment of reversal.

 While often described as a “patfrisk” of the interior of an automobile, see, e.g., Commonwealth v. Cruz-Rivera, 76 Mass. App. Ct. at 18, what is permitted *415 in these circumstances is actually “a protective search for weapons only.” Commonwealth v. Almeida, 373 Mass, at 271 n.2. As the Supreme Judicial Court has explained, given the justification for the search, “the search must be confined to the area from which the suspect might gain possession of a weapon,” id. at 272, and must be limited “to what is minimally necessary to learn whether the suspect is armed and to disarm him once [any] weapon is discovered.” Commonwealth v. Silva, 366 Mass, at 408.

The majority does assert at one point that all the “facts and circumstances justified the protective search of the interior of the vehicle,” ante at 410, but if, as the majority concludes, the suspicion of each passenger was not dispelled by the patfrisk, it would seem necessarily to follow that the initial basis for suspecting him sufficed to allow a further search of the vehicle. At the end of the day, our analysis is applicable whichever is the basis for the majority’s conclusion since, in either event, we would not rely on the initial suspicion aroused by either Johnson or Steed in reaching the conclusion that there was reasonable suspicion the vehicle contained a weapon.

Officer Hawkins testified that a Sergeant Sullivan, who did not testify, reported to Officer Hawkins that as Steed, who was not known to the officers, entered the vehicle after leaving the Chinese restaurant, he had his hand in the front pocket of his sweatshirt, “was maintaining his right hand in there, holding it tight to his body.” The motion judge stated that “[b]ecause Sullivan did not testify, precisely what he saw and what he suspected based on these observations was not made clear to this Court.” In any event, neither the Commonwealth nor the majority asserts that the police had reasonable suspicion that Steed was armed and dangerous prior to seeing him in the car apparently clutching something in his sweatshirt pocket.